[14280. In Bank.—April 1, 1893.]

## SARAH E. McDANIEL et al., Respondents, *v.* J. H. PATTISON et al., Appellants.

Equity Jurisdiction—Establishment of Lost or Spoliated Will—Exclusive Jurisdiction of Probate Court.—The jurisdiction of the probate court to establish a will is exclusive, even though the will has been lost or destroyed, or has been fraudulently suppressed; and a court of equity has no jurisdiction to grant relief in such a case, either directly or as incident to jurisdiction over other matters, even though the relief is sought by an alleged devisee against the spoliator, and it appears that the latter is one of the two witnesses whose testimony would be necessary to prove the will under section 1339 of the Code of Civil Procedure.

Id.—Cancellation of Deeds of Decedent at Suit of Devisees—Right of Heirs—Amendment of Complaint.—A complaint which seeks to annul and cancel certain deeds made by a decedent in his life-time, on the ground that they were fraudulently altered by the defendant so as to include all of the deceased grantor's property, and to have the property so fraudulently included in the deed declared vested in the complainants, and which alleges that the plaintiffs are heirs-at-law of the decedent, and also devisees under his last will and testament, which, it is alleged, had been fraudulently destroyed or suppressed by one of the defendants, and never probated, fails to state a cause of action, and a decree vesting title to the property, according to the alleged provisions of the will, will be reversed upon appeal, with liberty to amend the complaint by asserting only the rights of plaintiffs as heirs.

Appeal from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Anderson, Fitzgerald & Anderson,* for Appellants.

The jurisdiction of the probate court over the probate of a will is exclusive, and a court of equity has no jurisdiction thereof. (*In re Broderick's Will*, 21 Wall. 517; Pomeroy's Equity Jurisprudence, sec. 1158; *Castro* v. *Richardson*, 18 Cal.

478, 479; *State* v. *McGlynn*, 20 Cal. 273; 81 Am. Dec. 118; *Rosenberg* v. *Frank*, 58 Cal. 403; *Hunten Will*, 6 Ohio, 499.) The complaint fails to state a cause of action, as the relief sought is based upon the alleged will, but there is no allegation of the probate thereof, and a will without probate is of no avail. (See *Castro* v. *Richardson*, 18 Cal. 478; *Dublin* v. *Chadbourn*, 16 Mass. 441, 442; *Olney* v. *Angell*, 5 R. I. 198; 73 Am. Dec. 62; *Armstrong* v. *Lear*, 12 Wheat. 169.) The court clearly erred in overruling the motion for a nonsuit. If, in this proceeding, it were permissible for the court to receive any testimony as to the execution and contents of the alleged will, yet it was error to permit its establishment without proof of its contents by at least two witnesses. (Code Civ. Proc., sec. 1339; Swinburn on Wills, sec. 2, pt. 14, par. 4.) The contention that the court had jurisdiction to set up the will because of its having been fraudulently destroyed by one whose interest was antagonistic to it, is without merit. A court of chancery has no jurisdiction to establish a spoliated will. (*Morningstar* v. *Selby*, 15 Ohio, 345; 45 Am. Dec. 579; *Gaines* v. *Chew*, 2 How. 619; *Broderick's Will*, 21 Wall. 503; *State* v. *McGlynn*, 20 Cal. 266; 81 Am. Dec. 118. See *Siddell* v. *Harrison*, 73 Cal. 562.)

*Chapman & Hendrick*, for Respondents.

The cases cited by the appellant merely hold that a will cannot be used as a muniment of title unless it has first been probated, and that one cannot institute a proceeding merely to probate a will in a court of equity; but this action is not one for the probate of a will, but is an action to have a title of the devisees under a fraudulently suppressed or destroyed will confirmed as against the spoliators, and in such a case a court of equity clearly has jurisdiction. (*Campbell* v. *Wise*, 4 Mon. B. 442; *Bell* v. *Stiles*, 2 N. J. Eq. 220, 229; *Bowen* v. *Idley*, 6 Paige, 46; *Adam* v. *Adam*, 27 Vt. 50; *Buchannan* v. *Matlock*, 8 Humph. 390; 47 Am. Dec. 622; Pomeroy's Equity Jurisprudence, sec. 919; 6 Wait's Actions and Defenses, 377, 378; 3 Redfield on Wills, p. 16, ch. 1, sec. 7, and note 12, pp. 17, 18.)

The Court. — We are satisfied with opinions filed and the conclusion reached by Department One when this case was before it for decision, and the judgment is therefore reversed.

In their petition for a rehearing respondents claim that they are entitled to assert their rights as heirs, but it is evident from the pleadings, findings, and decree that the parties and the court below proceeded upon the theory that plaintiffs were claiming as devisees and not as heirs. The decree therefore cannot be modified, but we think there is enough in the complaint to justify an order allowing the plaintiffs to amend their complaint, if they desire so to do, so as to assert any claim they may have by reason of their heirship.

The judgment and order are reversed, and the cause is remanded with directions to allow the parties to amend their pleadings, if they be so advised.

Garoutte, J., McFarland, J., Paterson, J., Harrison, J.


Beatty, C. J., dissenting. — I dissent. The opinion of the department originally filed in this case, which has now been adopted by the court, decides two propositions, which in my opinion are untenable, and which if incorrectly decided not only operate unjustly in this case, but establish a most unfortunate precedent for others.

1. It is decided that the complaint fails to state any cause of action — is so fatally defective — in other words, that in the absence of even a general demurrer it will not support a decree limited in its operation to the annulment of the fraudulent deeds therein mentioned.

The sole ground upon which this conclusion is reached is that the complaint, although it shows clearly that the plaintiffs are heirs to the decedent, with an undoubted right in the absence of a will to maintain the action in that capacity, also shows that they are named as devisees of the same estate in a will which has been suppressed or destroyed by the defendant, and which has not been admitted to or denied probate. Reduced to its simplest terms, the proposition is that under such circumstances, the heir has no title to the property whatever upon which he can maintain an action to recover its possession, or prevent its fraudulent alienation. He has no title as heir be-

cause he may be proved to be a devisee, and he has no title as devisee because the will has not been admitted to probate. The title, in short, pending a decree of the probate court, establishing the will or the intestacy of the decedent, is nowhere. There must, it seems to me, be some fatal flaw in the reasoning which leads to such a conclusion. The fallacy evidently consists in the assumption that on a given state of facts, a man may be in legal contemplation a devisee, and at the same time not a devisee; for it is only upon this assumption that the plaintiffs can be denied all relief. One door is closed against them on the ground that they are devisees, another on the ground that they are not devisees.

To me it seems a sounder argument to say, that upon the facts alleged in the complaint, the plaintiffs either are or are not devisees. They must be either the one or the other, for there is no room for a third category in which to place them. If they are devisees, they may maintain the action in that capacity; if they are not devisees their title as heirs is undoubted. To hold that they are just sufficiently devisees to destroy their title as heirs, but not sufficiently so to enable them to make title under the will, is to draw too fine a distinction for the ends of justice — a fact made strikingly apparent by the results of the doctrine in this case, and its inevitable consequences in other cases that may be easily supposed.

The probate of an existing will, even when regularly and formally executed and uncontested, requires some time. At least ten days' notice of the time and place fixed for hearing the proofs must be given, and in the matter of protecting estates from spoliation even so short a delay as ten days might be of most serious consequence. But when a will is contested, or when it has been fraudulently suppressed or destroyed, so that if proved at all, it must be proved in the face of all the difficulties that attend the establishment of a spoliated or contested will, months, and even years, may elapse before a final decree establishing the will or the fact of intestacy. In such a case the heirs of the estate, whether named as devisees or not, could maintain no action for its preservation or protection until the decree of the probate court became final; for clearly, if they have no title as heirs when named as devisees in an unproved

will, they would *a fortiori* have no title as heirs if the estate
was devised to others.

But I need not concern myself about the latter case, the question here being as to the right of an heir who is at the same time named as devisee in an unproved will, to protect the estate which in any event belongs to him from spoliation or destruction, pending a final decree of the probate court admitting the will to probate or establishing the intestacy of his ancestor.

The decision of the court is that under such circumstances he cannot maintain an action to set aside and declare void a forged deed purporting to convey his ancestor's estate to the forger. In other words, although years may elapse before a final decree in probate, the heir must stand by while the forger, vested with an apparently fair record title of the property, makes use of his opportunity to victimize an innocent purchaser; or, if the case were different, if the deed instead of being a forgery conveying no title, has merely been obtained by some fraud or deception, which will authorize a court of equity to set it aside at the suit of the heir or devisee, but in the mean time will enable the fraudulent grantee to pass a good title to an innocent purchaser for value, there will be the same inability on the part of the heir to sue. He cannot commence an action and file notice of *lis pendens*, but must wait until his *status* is determined, until it is settled whether he owns the estate as heir or devisee. When that is done he finds that the estate is vested in an innocent purchaser by a transfer which he has been denied all opportunity of preventing; and, if he could not maintain such an action, neither could he maintain an action to oust an intruder, or to enjoin the most destructive waste or spoliation. He is, in other words, utterly impotent to protect property which is certainly his by one title, if not by the other, merely because it has not been determined which is the good one.

I cannot forbear to express my dissent from a doctrine which to my mind is so unfounded and so destructive of the most valuable rights of heirs. It is scarcely necessary to point out the broad distinction between this case and *Castro* v. *Richardson*, and other similiar cases cited in the opinion of the court. In that case the only claim of title was based upon a devise in an

unproved will.   I venture to say if the complaint had alleged that the plaintiff was also an heir it would not have been held that it showed no title.

My conclusion upon this branch of the case is that the complaint did disclose facts sufficient at all events to warrant a decree annulling the several deeds of conveyance therein mentioned.   It most assuredly stated a cause of action, and the most that can be said of the allegations with respect to the will is that they rendered it ambiguous or uncertain as to the measure of relief to which the plaintiffs were entitled; but, conceding that they had that effect, all objections on the ground of ambiguity or uncertainty were waived by the failure to demur.

The opinion of the court just filed, while adopting the original opinion of the department, adds a clause allowing the plaintiffs to amend their complaint so as to assert their right as heirs. This permission appears to be entirely inconsistent with the decision.   The record shows that the existence of an unproved will was as clearly established by the testimony at the trial as it was alleged in the complaint.   The only amendment which the plaintiffs can possibly make is to omit from their complaint allegations of fact which are established by plenary proof.   By doing so they may make a *prima facie* case, but all that the defendants will have to do to defeat their action will be to allege and prove the same facts, as they can easily and will most certainly do; for if the allegation of these facts by plaintiffs show that they have no right of action, the facts are necessarily material, and when they are alleged and proved by the defendants, the action must inevitably be dismissed.

2.   It is also held in the opinion of the court that the devisee in a spoliated will can have no relief in equity against the spoliator, unless he first establishes the will in probate.   This part of the decision ignores the well-established distinction between the proceeding *in rem*, by which the probate court establishes a will so as to bind the heirs generally and the whole world, and a suit in equity by the party injured against the spoliator to charge him as a trustee with respect to the property gained by his fraud.

I admit the correctness of the doctrine that a court of equity, as such, has no power to establish a will even in a case of

spoliation so as to bind the heirs generally, although there are cases of spoliated wills where such power has been asserted and exercised. (*Bell* v. *Stiles*, 2 N. J. Eq. 220.) The current of authority, however, is the other way, and I think the sounder and more reasonable view is that for the establishment of a will in the strict sense the jurisdiction of the probate court is exclusive. But the same law-writers who uphold this doctrine, admit an exception or distinction in case of a spoliated will. Professor Pomeroy, for instance, who is cited in support of the prevailing opinion, when discussing this specific point, uses the following language: "When instruments have been fraudulently suppressed or destroyed for the purpose of hindering or defeating the rights of others, equity has jurisdiction to give appropriate relief by establishing the estate or rights of the defrauded party"; and he gives the following illustration: "If an heir should suppress a deed or will, equity would confirm the title of the grantee or devisee." (Pomeroy's Equity Jurisprudence, sec. 919, and note.) Other law-writers state the doctrine in substantially the same terms. (6 Wait's Actions and Defenses, 377; 3 Redfield on Wills, ch. 1, sec. 7; and see authorities cited at 2 N. J. Eq. 239.) The only case which I have found which holds that a court of equity can afford the defrauded devisee no relief against the spoliator is the case of *Morningstar* v. *Selby*, cited in the opinion of the court. None of the other decisions there cited was made in a case of spoliation, and the general expressions therein contained to the effect that a court of equity, as such, has no power to establish a will, have no application to an action by the defrauded legatee against the spoliator.

Not only the weight of authority, but every consideration of justice and expediency would seem to support the view that a court of equity is not without the power to afford a remedy for so gross a wrong, where, by the very act of the spoliator, the injured party has been deprived of all other remedy.

It is contended that since the probate court is invested with power to take the proof of lost or destroyed wills, there is no necessity for resorting to equity in such a case, and no ground for its interposition. It is true that a lost or destroyed will may be proved and established in the probate court if there is

sufficient evidence of its execution and its terms; and this is a wise and necessary provision for the enforcement of the rights of devisees and legatees against heirs generally. But for the protection of innocent heirs, and the prevention of frauds, the law has at the same time wisely provided that a lost or destroyed will shall not be admitted to probate, unless its provisions are clearly and distinctly proved by two credible witnesses. (Code Civ. Proc., sec. 1339.) Now it might often happen, as it has happened in this case, that there would be but one living witness by whom a bequest or devise in a spoliated will could be proved. In such a case the will could not possibly be admitted to probate so as to bind innocent heirs, no matter how clear the evidence of its existence and its destruction by another heir, because, as to the innocent heirs for whose protection the law was enacted, there would not be sufficient evidence of its provisions; but as to the spoliator, the case would be different, because the rule of evidence would be different. Everything is presumed against the spoliator, and the spoliation being clearly proved, comparatively slight evidence of a bequest thereby defeated would be satisfactory as against him, and therefore sufficient. To hold otherwise would be to convert a provision intended as a shield for the innocent into an instrument of fraud. A will could be destroyed by an heir, and he could admit or even boast of the act, but, unless the provisions of the will could be clearly established by *two* credible witnesses, the legatee or devisee could have no relief against the actual perpetrator of the fraud. I am unwilling to admit that a court of equity is powerless to grant relief in such a case. It seems, on the contrary, to be precisely the case in which equity is bound to interpose, upon the ground that there is no remedy elsewhere. The result of its interposition is not to usurp the functions of the probate court by establishing the will in a strict sense, so as to bind all the world, but merely to fasten a trust upon the property coming to the hands of the spoliator in favor of the person defrauded. (Civ. Code, sec. 2224.)

The case is strictly analogous to the numberless cases in equity arising under the Statute of Frauds, in which rights in lands have been effectuated upon the ground of implied or resulting trusts in the absence of the written evidence of the

right required by the statute. Section 1339 of the Code of Civil Procedure, requiring the evidence of the two creditable witnesses to establish a lost will is nothing more nor less than a statute of frauds, and can no more be used as a protection for fraud in a court of equity than other statutes designed to effect the same purpose.

De Haven, J., concurred in the foregoing opinion of the Chief Justice.

The following are the opinions above referred to rendered in Department One on the 16th of September, 1891:—

Garoutte, J.—Plaintiffs are the daughter and children of another daughter of A. M. Pattison, deceased, and the defendants are the widow and son of said deceased.

This was an action to cancel and annul certain deeds, to wit: 1. A deed executed by A. M. Pattison (now deceased) to J. H. W. Pattison, except as to two certain lots in the Orchard tract. 2. A deed executed by defendant, J. H. W. Pattison and wife, to defendant, Mary Pattison, widow of A. M. Pattison, deceased. 3. A deed executed by Mary Pattison, widow, to J. H. W. Pattison. In addition to the foregoing, plaintiffs also asked that the property belonging to A. M. Pattison, at the time of his death, be declared vested in the plaintiffs and defendants as follows: "That said Mary Pattison, widow, shall have a life estate therein, and after her death that the same shall vest in the children of herself and said deceased in equal undivided one-third interests." There is other relief prayed for, concerning an accounting for moneys of the said deceased, held by J. H. W. Pattison, unnecessary to mention in detail.

Among other matters the complaint alleges: "That A. M. Pattison died April 5, 1885, a resident of Los Angeles County, California, and plaintiffs and defendants are his heirs-at-law; that upon the 4th of March, 1885, said Pattison was seized in fee of valuable real estate in Los Angeles City and in Carthage, Missouri; that on the fifth day of September, 1884, said Pattison made a will, by which all of his property was left to his widow for life, and after her death to pass in three equal shares, one to plaintiff McDaniel, one to plaintiffs, the children of a de-

ceased daughter, and the third to defendant, J. H. W. Pattison; that said will was his last will and testament, was unrevoked at the time of his death, and has not been probated, but was fraudulently destroyed or suppressed by defendant, J. H. W. Pattison; that upon the fourth day of March, 1885, said deceased made a deed to defendant, J. H. W. Pattison, conveying two lots in the Orchard tract, and said defendant fraudulently altered said deed so as to include all the real estate of his father, said Pattison, deceased, both in Missouri and California; that afterward said defendant, Pattison, made a deed to his mother, defendant Mary Pattison, purporting to convey all of the property fraudulently inserted in the said prior deed, and that subsequent thereto the mother, Mary Pattison, made a deed purporting to convey a portion of said property back to her son, the said defendant; that the said mother was old and feeble, under the influence of her son, and that these deeds were altered, made, and procured to be made by said son, J. H. W. Pattison, for the purpose of defrauding plaintiffs; that said defendant has taken possession of six thousand dollars in money of the estate and has made no account thereof," etc. The defendants jointly answer and deny the allegations of the complaint, especially those pertaining to the alleged fraud of the defendant, J. H. W. Pattison. Judgment was rendered for the plaintiffs as prayed for, and this is an appeal from that judgment and the order denying defendants' motion for a new trial.

We have in the complaint in this case, an allegation that plaintiffs are heirs-at-law of the deceased Pattison, and also, the further allegation, that they are devisees under an unprobated, fraudulently destroyed last will and testament. Plaintiffs appear to have relied chiefly upon their standing as devisees under this alleged will, rather than as heirs-at-law, and it is from this position that the trial court viewed the action, for we find its decree vesting title to the property of A. M. Pattison, deceased, according to the alleged provisions of the will.

Counsel for appellants, with great vigor and learning, assail the jurisdiction of the court to hear and determine the matters involved herein, "insisting that an adjudication of such matters necessarily involves the probate of a will and distribution thereunder; that the trial court did in fact probate the will, and

according to its provisions decreed title thereunder; that these are matters solely and exclusively within the jurisdiction of the superior court as a court of probate, and that a court of equity had no jurisdiction whatever to adjudicate upon them." Respondents insist "that this action is not brought for the purpose of probating a will; that is a matter, while necessary for the determination of the case, merely incidental to the main relief sought, to wit, the annulment of certain deeds and a decree quieting title. They insist that an heir has fraudulently destroyed or suppressed a will and fabricated a deed, and thereby made it appear that the testator has conveyed to him all the property he had in the world; that owing to the peculiar facts of this case, as disclosed by the evidence, it is impossible that this destroyed will could ever be proved in the probate court; that the title of these plaintiffs, as devisees, vested immediately upon the death of the testator and without the probate of the will, and when the defendant, J. H. W. Pattison, by fraud, attempts to deprive them of it, under the circumstances as here disclosed, a court of equity has jurisdiction to administer relief." Thus it will be seen that the jurisdiction of a court of equity to hear and determine these matters is the pivotal point in the case.

While there was no demurrer filed to the complaint, yet appellants insist that plaintiffs do not state a cause of action, and that therefore the decree has not sufficient support upon which to stand. The evidence is much broader than the pleading, and conditions often arise where an inherently defective pleading may be cured by the evidence and findings of the court, but such is not the present case, for the findings of fact follow the pleading rather than the evidence. Plaintiffs rely upon their *status* as devisees under the will of A. M. Pattison, deceased, for the right to maintain this action. Their title to the realty, their right of action, the relief demanded and decreed are all based by the complaint and judgment upon the alleged will; yet the complaint alleges that the will was not probated, neither does it give any reason or excuse why probate had not been had. To be sure, it states that defendant, J. H. W. Pattison, had destroyed and suppressed it, but that adds no weight to their position, for the law expressly provides for the probating of lost

and destroyed wills. (Sec. 1338, etc., Code Civ. Proc.) In *Wood* v. *Mathews*, 53 Ala. 1, it was decided that "courts of law and equity in this country will not take cognizance of testamentary papers, or of the rights dependent on them until after proper probate." And, again, the court said: "The law of this state confers upon the courts of probate original and exclusive jurisdiction, not only of the probate of wills of personality, but of realty, and the only evidence of the existence of such will, which can be received in any other forum, is the sentence of that court declaring its authenticity and validity." In *Shepherd* v. *Nabors*, 6 Ala. 637, the question presented was whether the legatee of personal property could recover it at law until the will had been admitted to probate in the proper forum. The court quoted approvingly the following declaration of Lord Kenyon, in *Rex* v. *Inhabitants of Nethersal*, 4 Term Rep. 258: "We cannot receive any other evidence of their being a will in this case than such as would be sufficient in all other cases where titles are derived under a will, and nothing but the probate or letters of administration with the will annexed are legal evidence of the will in all cases of personality." To the same effect is *Armstrong* v. *Lear*, 12 Wheat. 169; *Campbell* v. *Sheldon*, 13 Pick. 22; *Fotheree* v. *Lawrence*, 30 Miss. 416; *Olney* v. *Angel*, 5 R. I. 198; 73 Am. Dec. 62.

In the case of *Castro* v. *Richardson*, 18 Cal. 480, this court said: "We understand it to be the settled doctrine of the courts of this country, that where the proceedings in probate are conclusive of the validity or the invalidity of the will, it cannot be received in evidence to maintain a title founded upon it, until it has been admitted to probate." And again: "It is unnecessary for us to accumulate authorities upon this subject; there is no doubt that this is the prevailing doctrine wherever similar statutes exist and the matter has undergone consideration by the court." That case was an action of ejectment, and one of the links relied upon by plaintiff in setting out his chain of title was an unprobated will, and this court said: "The facts stated in the complaint do not make out a title in the plaintiff," and the judgment was reversed. By the same line of reasoning how can it be said that plaintiffs, as devisees under an unprobated, destroyed will, have such title to realty as to maintain an action

to set aside and cancel deeds to such realty upon the grounds of fraud? Their title rests upon this alleged unprobated will — a will that has been fraudulently destroyed, a fact in itself that weakens their position, for the difficulties arising in establishing its probate are largely increased. It is plaintiffs' muniment of title, yet until stamped as genuine by the seal of the proper tribunal, it cannot be received in evidence in other courts, and no rights can be asserted under it. Of itself, it can have no more effect in transferring or vesting title than a deed without delivery. Conceding it would fortify plaintiffs' position if facts were stated in their complaint showing why this will has not been probated, and why it cannot be probated by the regular course of proceeding in the tribunal established for such purposes, yet they have entirely failed so to do.

Respondents' counsel insist that even if they have not shown a right of action as devisees, yet they have alleged themselves to be heirs-at-law, and are therefore entitled to maintain the action in that capacity. In this case the coincidence arises that the heirs-at-law and devisees under the will are identical, still it does not follow if the will under which they claim to hold as devisees has not been probated, that they have any rights to the testator's property as heirs-at-law. Plaintiffs allege that they are devisees under an unprobated will; if it had been a probated will, their position as heirs-at-law would have had no value whatever, and the fact that it has not been probated does not add strength to their position. As against the pleader we assume this document to be a valid genuine will, which would be probated in the regular way if presented to the probate court, and until presented and probate rejected, these plaintiffs, as heirs-at-law, have no rights in the property which can be maintained either in courts of law or equity. We conclude, therefore, that the complaint does not state a cause of action, and, consequently, the decree has no sufficient support.

Inasmuch as if the case were reversed solely upon the foregoing ground, it would be remanded to the lower court for a new trial, with permission to the plaintiffs to amend their pleading, if they deemed such course advisable, we feel constrained to take a broader view of this question and determine whether a court of equity, under any state of facts, and especially under

the state of facts as developed by the evidence in this case, viewed by the light of the laws of California, has jurisdiction to set up and prove a will either directly or as incidental to other relief sought.   The authorities already cited and principles announced oppose such doctrine, but let us look further.   The right of jurisdiction in this case rests upon the following facts, which respondents insist are disclosed by the evidence:  That A. M. Pattison died leaving a last will and testament; that defendant, J. H. W. Pattison, a son, in pursuance of a scheme to defraud plaintiffs of their interest in the property as devisees, after his father's death, destroyed the will; that in furtherance of this scheme he made false deeds to himself of the property, and procured by undue influence his mother, who was old and feeble, to make certain other deeds therefor; that the aforesaid will has not been probated, and cannot be probated in the regular channel, as there are only two persons acquainted with its provisions, and one of these is the defendant in fraud, who will not testify truthfully thereto, the statute requiring that its provisions be proven by the evidence of two credible witnesses. It appears from the foregoing that the plaintiffs are in a very unfortunate position, and that the defendant, J. H. W. Pattison, is a very bad man; yet, is this the proper proceeding in the proper court to right these wrongs and punish the offender?

We do not see how this action can be maintained even under the facts claimed.   In this state the provisions of the code form a complete and perfect system in relation to the probate of wills, whether those wills are in existence, or lost or destroyed.   In the *Broderick Will Case*, found in 21 Wall. 517, the supreme court of the United States, in speaking of the law of California relating to probate of wills, said: "In view of these provisions it is difficult to conceive of a more complete and effective probate jurisdiction, or one better calculated to attain the ends of justice and truth."   In note 3 to section 1158 of Pomeroy's Equity Jurisprudence, the author says: "On the contrary, the doctrine seems to be general, if not universal, throughout the states, that a court of equity will not recognize nor act upon a will of land or of personal property until it has been admitted to probate."   The case of *Gaines* v. *Chew*, 2 How. U. S. 619, a leading case upon this question, declares, that

before any title could be set up under the will, it must be pro-
bated in the probate court, holding that in Louisiana the pro-
bate court had exclusive jurisdiction of those matters. In the
opinion Justice McLean suggested that if all other remedies
failed, "It might be a matter of grave consideration whether
the inherent powers of a court of chancery might not afford a
remedy, when the right was clear, by establishing the will of
1813." In the *Broderick Will Case*, 21 Wall. 503, referring to
this language, the supreme court of the United States said:
"Of course the latter expressions were *obiter dicta* and can
scarcely be said to have the support of any well considered case."
And again, the court say in the same case, referring to the law of
this state : "On the establishment or non-establishment of the
will depended the entire right of the parties; and that was a
question entirely and exclusively within the jurisdiction of the
probate court. In such a case a court of equity will not inter-
fere, for it has no jurisdiction to do so. The probate court
was fully competent to afford adequate relief." The cause at
bar is in the nature of an action to quiet title, yet in Pomeroy's
Equity Jurisprudence, section 1158, the author says: "The
rule is settled in England that a devisee in possession is entitled
at any time to maintain a suit against the heir-at-law of the tes-
tator, for the purpose of establishing the will, . . . . although
the will creates no trusts but gives the devisee a purely legal
estate, and although it is not necessary to administer the estate
under the direction of the court of chancery. . . . . In both
instances the suit is in the nature of a bill to quiet title. For
obvious reasons no such jurisdiction probably exists in any of
the states, certainly not in the great majority of them." In
the case of *Morningstar* v. *Selby*, 15 Ohio, 345; 45 Am. Dec.
579, in which state the court of common pleas answers to our
superior court, having both an equity and probate department,
it was attempted to probate a fraudulently destroyed will upon
the equity side of the court, there being no statutory provision,
as in this state, providing for probate of lost and destroyed
wills. After an exhaustive examination of the law upon the
question the court said : "Those authorities carefully exam-
ined will show that a court of chancery has no inherent power
either in England or America to establish a lost will," and under

the provisions of a constitution very similar in these respects to
ours, held, that the probate court had exclusive jurisdiction of
all matters pertaining to probate proceedings, and denied the
application.

This is the first instance arising in this state where it has been
sought to prove a will otherwise than by a decree of the pro-
bate court, and to that extent we move on untrodden ground.
The fact that this will has been suppressed or destroyed in
fraud rather than lost through accident or mistake, does not
affect the question of jurisdiction.   No such distinction is recog-
nized by the provision of the Code of Civil Procedure, and
fraud, accident, and mistake demand equal attention when
knocking at the doors of a court of equity.   In *Rosenberg* v.
*Frank*, 58 Cal. 403, it was decided that as to the probate of a
will, the jurisdiction of the probate court is exclusive.   At the
same time in that case a divided court held that a court of
equity had jurisdiction to construe a will, thereby encroaching
upon the jurisdiction of the probate court to an extent not
equaled in any other decision found in the reports of this state.
We might add, the correctness of the law there found, as to the
jurisdiction of a court of equity to construe a will under the
laws of this state, is not only doubted, but the effect of the de-
cision is very much limited in *Siddall* v. *Harrison,* 73 Cal. 562.
The principles laid down and reasoning had in *Morningstar* v.
*Selby,* 15 Ohio, 345; 45 Am. Dec. 579, and cases there cited,
also militate strongly against the doctrine.   *In the Matter of
Will of Bowen,* 34 Cal. 689, in speaking of the provision of our
former constitution, the court said:   "This is a comprehensive
grant of probate jurisdiction, and as there is nothing in the
article granting concurrent jurisdiction, the grant to the probate
court must be held exclusive."   In *Castro* v. *Richardson,* pre-
viously cited, the court said, in speaking of probate of wills:
"It was intended that the mode of proof pointed out by the
statute should be uniformly pursued, and to give effect to that
intention, it is necessary to maintain the exclusive authority of
the probate court."   In *State* v. *McGlynn,* 20 Cal. 271; 81 Am.
Dec. 118, the court in speaking of decrees in the matter of pro-
bate of wills, said: "It is necessary for the repose of society
that it should be definitely settled by one judgment, and not be

left to be buffeted about by different and possibly conflicting judgments of different courts."

Respondents' counsel insist that the decree in this case simply probates the will for the purposes of this case, and as incidental to the main relief sought, yet if the probate court has exclusive jurisdiction of the matter, and the will has no life until probated, the decree would *pro tanto* repeal those principles of law. The conflict is irreconcilable and the decree must fall.

It is quite evident that if a court of chancery cannot entertain direct jurisdiction to establish a will, it can possess no jurisdiction to do so as incident to jurisdiction over other matters. Such a course would lead to grave complications, would destroy the uniformity contemplated in the mode and manner of proof, and would be opposed to the system established by the constitution and statutory laws of California. Counsel further insist that as the will has been destroyed, and as they are unable to prove its contents by two witnesses as required by section 1339 of the Code of Civil Procedure, and for that reason have no standing in the probate court, the court of chancery should take jurisdiction and admit it to probate. Conceding the jurisdiction of such court, we are not prepared to say the rule of evidence would not be the same, for if it were otherwise the safeguard thrown around the rights of heirs would be lost and the statute rendered entirely nugatory. But the court has no such jurisdiction, a judgment of probate being a judgment *in rem*, a judgment binding every one who has any interest, it is of the soundest policy that one tribunal should have vested in it exclusive power to hear and determine, no matter what may be the nature or character of the will, and no matter what may be its situation or condition. Such, undoubtedly, was the end and object sought to be attained by the framers of our law in the enactment of a full, complete, and comprehensive probate procedure. Respondent has cited many cases holding that the fraud of the spoliator affords ground for the intervention of a court of equity, but we do not think they are the better authority, and the weight of authority is the other way. But whatever may be the conflict in decisions of courts of other states, we think the doctrine contended for has no sufficient support in this state, and is opposed to the spirit of her jurisprudence upon

probate matters.   The law in this state does not look that way.

Let the judgment and order denying a new trial be reversed and the cause remanded.

HARRISON, J., concurred.

PATERSON, J.—I concur.   If the plaintiffs were heirs-at-law, I think they could maintain an action to set aside the deed under section 1452 of the Code of Civil Procedure.   From their own showing, however, they are not heirs-at-law, but devisees, and until the will has been probated, and their *status* as devisees has been judicially fixed by the probate of the will, they cannot maintain an action.   It is alleged in the complaint that the will was "fraudulently destroyed, *or* concealed, *or* suppressed, and was never admitted to probate or filed in the court, and is now in the control of said J. H. W. Pattison, unless the same has been destroyed by him."   The finding of the court is in the same disjunctive, equivocal form.   It may be that on petition for letters the defendant will produce the will.   It does not appear that any attempt has been made to secure its production, and, taking the pleadings most strongly against the pleader, we must assume that it can be produced.