[Civ. No. 668. Fourth Appellate District.—December 13, 1932.]

In the Matter of the Estate of W. S. MILLER, Deceased. THOMAS N. MILLER, Appellant, v. CHRIS C. CARRASCO, as Public Administrator, etc., et al., Respondents.

Randall & Bartlett and Kenneth W. Kearney for Appellant.

Rex B. Goodcell, Manley C. Davidson, Jess G. Sutliff and George Francis for Respondents.

AMES, J., *pro tem.*—This is an appeal from an order admitting to probate two documents as the last will and testament of W. S. Miller, deceased, who died at Lone Pine, Inyo County, on the twenty-seventh day of March, 1931. He left surviving him a brother, Thomas N. Miller, the contestant and appellant here, and a sister, Ida May McNeal. The sole beneficiary named in the purported will was Minnie Miller, a cousin of decedent and a respondent here.

A few days after his death there was found among the effects of decedent, under the circumstances hereinafter related, a document which was proved, without controversy, to have been entirely written, dated and signed in his handwriting, and which is as follows:

"Lone Pine Feb 19 1931

"My dear Minnie do not forget our Bank account in the Farmers and Merchants Nat. Bank is a joint account and is the property of you and myself also the one acre where we live is yours and yours only there is another paper in my pocket book which will explain do not let them rob you as Tom tried to do once when we were in Culver City some years ago if T. N. Miller Ida or any niece or nephew refuses to comply with my request or my Bro or sister close the account and give them nothing as they are not entitled what I am giving them You know why dear Cousin

"W. S. MILLER or BILL.
"To MINNIE MILLER."

Folded within this document there was discovered a smaller sheet of paper, also proven to have been written in its entirety by the hand of decedent and signed by him but not bearing any date, which is as follows:

"All bank accts or any and all property real and person belonging to me will be given to Minnie I. Miller my cousin as she has been my partner and helper. All property and cash I may die possessed of was earned by Minnie Miller and myself and I hope and pray to God to protect her Minnie.

"W. S. MILLER."

The trial court concluded, as a matter of law, that the larger paper and the smaller paper together constituted the

last will and testament of deceased, was testamentary in character and was executed with testamentary intent by the decedent, and accordingly admitted the same to probate. From such order this appeal is prosecuted.

It is the contention of appellant that neither of these documents, when construed together or separately, discloses a testamentary intent on the part of the decedent. Respondents, on the other hand, maintain that the two documents, when construed together, and aided by the extrinsic evidence which was introduced at the trial, clearly establish a testamentary intent.

It will be necessary first to refer briefly to the testimony so introduced. From such evidence it appears without controversy that Miss Miller was a cousin of decedent, with whom he had made his home for more than twenty years. About four days after the funeral of the deceased, one Carter Newlin, who had been an employee of decedent, called at the residence of Miss Miller for the purpose of opening the decedent's safe, which was at her residence. Since the death of Miller no person, other than Newlin, knew the combination of the safe and it had not been opened. Newlin opened the safe in the presence of one Lorene Millner and Miss Miller and it was found to contain two or three pocketbooks or wallets, in one of which were found the two documents here involved folded together, the smaller folded within the larger one. The pocketbook or wallet in which these documents were found contained no other papers. Lorene Millner, a witness for respondents, who was present when the safe was opened by Carter Newlin, testified that she saw the two instruments folded together, the smaller within the larger one, and the words "To Minnie Miller" were written on the documents. She further testified that about two or three weeks before decedent's death and before his last illness, she had a conversation with him at Huntington Park, California. In relating that conversation she testified as follows: "Why he told me that I need not worry about Ma Meemee because she would always be taken care of, at the time of his death there would be papers found amongst his things that would take care of her. Ma Meemee is Miss Miller."

Nellie E. Reynolds, a witness for respondents, testified that about three or four weeks before his last illness, in a conversation with decedent at Lone Pine, he said that he "wanted to fix things for Minnie Miller, that everything he had or ever had been that he owed to her, that he wanted to fix things for Minnie so no one could make any trouble. He was afraid of his brother Tom and he had written these and he showed them to me and told me that this one (indicating)—that Minnie would understand." During the course of this conversation he produced and exhibited to the witness the two documents here in controversy, which were identified by the witness as the identical documents to which decedent referred in the conversation above related. Again she testified that "Both of these pieces of paper were there at that time and he said he had fixed things for Minnie, and then he read them to me and showed them to me. They were folded at that time."

The smaller of the two documents, while written and signed in the handwriting of the decedent, did not bear any date and standing by itself would not constitute an olographic will. (Probate Code, sec. 53.) The document which bears the date of February 19, 1931, complies with all of the requirements of a valid olographic will, unless it fails to disclose the testamentary intent. The reference to the bank account is not a testamentary disposition of property but is merely a statement of fact that the same is "a joint account and is the property of you and myself". The same is true as to his reference to "the one acre where we live". Miss Miller testified that that property belonged to her. A testator is not presumed to devise property which already belongs to the beneficiary. This document, standing by itself, would not constitute a will. However, we think that the next clause in this document is significant. The testator there says: "There is another paper in my pocketbook which will explain." The only other paper discovered in the same pocketbook where this document was found, was folded within it, and was the undated document which is above set out, and in it he says: "All bank accts or any and all property real and person belonging to me will be given to Minnie I. Miller, my cousin as she has been my partner and helper."

█ It has long been the rule in California that a non-testamentary document may, by reference, be incorporated in and made a part of a will. This rule was announced in *Estate of Young*, 123 Cal. 337 [55 Pac. 1011, 1012], in which the court says: "Before such an extrinsic document may be so incorporated, the description of it in the will itself must be so clear, explicit and unambiguous as to leave its identity free from doubt". The same rule has been announced in *Estate of Anthony*, 21 Cal. App. 157 [131 Pac. 96], *Estate of Shillaber*, 74 Cal. 144 [15 Pac. 453, 5 Am. St. Rep. 433], and *Estate of Sullivan*, 94 Cal. App. 674 [271 Pac. 753]. In *Estate of Plumel*, 151 Cal. 77 [90 Pac. 192, 121 Am. St. Rep. 100], it was held that the identification of such document may be aided by extrinsic proof.

█ Another requirement to a valid incorporation of an extrinsic document into a will by reference is that such document must have been in existence at the time of the execution of the will. (*Estate of Shillaber, supra; Estate of Anthony, supra.*) This requirement has been complied with in this case. The language of the will itself that "There is another paper in my pocketbook" indicates its existence at that time. After his death that document was found at the place and in the receptacle where he said it was. We think the reference to the undated instrument is sufficient to incorporate it into and make it a part of the will.

█ Another requirement of a valid will is that the intention of the deceased that the identical paper in question should stand for a last will and testament must be plainly apparent. Effect must be given to such intention if it can be discovered and is consistent with the rules of law. (*Estate of Meade*, 118 Cal. 428 [50 Pac. 541, 62 Am. St. Rep. 244].) Such intention must be clearly expressed and with legal certainty, otherwise title to the heirs at law must prevail (*Estate of Major*, 89 Cal. App. 238 [264 Pac. 542]; *Estate of Button*, 209 Cal. 325 [287 Pac. 964]). An intention to make a testamentary disposition of his property, no matter how clearly expressed, will not suffice as a valid will unless it appears that the very paper upon which his intentions were written was by him intended to operate as a will. The rule which has been quoted many times in deci-

sions in this state is set forth in *Estate of Button,* 209 Cal. 325, at p. 331 [287 Pac. 964, 967], as follows:

"In order for a document to be the last will and testament of a deceased person it must, in addition to meeting all other legal requirements, clearly show that the decedent intended it to take effect only after his death, and it must satisfactorily appear therefrom that the decedent intended by the very paper itself to make a disposition of his property in favor of the party claiming thereunder. (*Estate of Meade,* 118 Cal. 428 [50 Pac. 541, 62 Am. St. Rep. 244]; *Major's Estate,* 89 Cal. App. 238 [264 Pac. 542]; *Estate of Beffa,* 54 Cal. App. 186, 188 [201 Pac. 616]; *Estate of Spitzer,* 196 Cal. 301, 307 [237 Pac. 739, 742].)"

■ It is well established in California that in arriving at the intention of a testator the court should not be limited to an examination of the document itself. In *Estate of Spitzer,* 196 Cal. 301 [237 Pac. 739, 740], the deceased wrote an olographic will in the form of a letter, in which, after referring to the fact that he had conveyed certain property by deed, said: "Bal. of estate to go to Lulu M. Plane." At the trial of a contest of this will the court excluded the testimony of a witness to whom decedent had said "Everything is all fixed. I have written a letter to my brother and my wife will be taken care of and I want my daughter to be taken care of." Upon appeal from a judgment refusing probate to this will, the Supreme Court reversed the lower court and held that it was error to exclude such testimony as it was shown to relate to the identical paper sought to be established as a will. That evidence of surrounding circumstances is admissible for the purpose of showing testamentary intent has been held in the following cases: *Estate of Beffa, supra; Clarke* v. *Ransom,* 50 Cal. 595; *Mitchell* v. *Donohue,* 100 Cal. 202 [34 Pac. 614, 38 Am. St. Rep. 279]; *Estate of Young, supra.*

■ No particular form of words is necessary to show a testamentary intent (*Estate of Beffa, supra; Estate of Button, supra; Estate of Major, supra*), and if it can be gathered from the language of the document itself and the surrounding circumstances as shown by parol, that the testator intended, by the propounded document to make a

revocable disposition of his property, to take effect after his death, the document will be effectual as his will.

█ Tested by the foregoing rules, we think that the propounded documents comply with all legal requirements to constitute a valid olographic will.

The language of the undated document that "all property real and person belonging to me will be given to Minnie Miller" expresses a testamentary wish. That these words were penned with a consciousness of approaching dissolution is evinced in the next sentence in which he asserts that, "all property and cash I may die possessed of was earned by Minnie Miller and myself". The discovery of the undated document folded within the larger one, at the place where he said it was, aided by the parol evidence of witnesses Lorenc Millner and Nellie E. Reynolds is ample evidence of the identity of the former document, which by reference had been incorporated in and made a part of his will; and, finally, his statement to Nellie E. Reynolds, not only that "he wanted to fix things for Minnie Miller", but that "he had fixed things for Minnie", coupled with the exhibition of the two documents to her, furnish ample evidence of a testamentary intent.

The judgment and order appealed from are affirmed.

Barnard, P. J., and Marks, J., concurred.