[Civ. No. 12406. Second Appellate District, Division Two.—March 8, 1940.]

FREDERICK R. AHLBORN, Appellant, v. GRACE RAYMOND PETERS et al., Respondents.

Cantillon & Glover, J. F. T. O'Connor and Ronald Button for Appellant.

Freston & Files and Ralph E. Lewis for Respondents.

MOORE, P. J.—Plaintiff appeals from three judgments entered against him after the demurrers of the several defend-

ants to his complaint had been sustained without leave to amend. In substance his complaint sets forth that he was named as residuary legatee under the last will of his maternal aunt, Louie E. Raymond, deceased; that she left, at the time of her decease in July, 1937, an estate of the value of $500,-000; that defendant Grace Raymond Peters is his mother;

"V"

"That shortly after the death of Louie E. Raymond, the defendants Grace Raymond Peters and Ida Lillienkamp found among the decedent's papers and effects two documents written, signed and dated entirely in the handwriting of decedent, one of which was subsequently destroyed as will hereinafter appear. The provisions of the document so destroyed are in substance as follows:

" 'I, Louie E. Raymond, make this, my Last Will and testament, and hereby revoke any and all former Wills. To my brother, Howard Raymond, I leave the sum of Ten Thousand Dollars ($10,000.00). To my brother, Gordon Raymond, I leave the sum of Ten Thousand Dollars ($10,000.00). To my sister, Grace Raymond Peters, I leave the sum of Ten Thousand Dollars ($10,000.00). To Ida Lillienkamp, my maid, I leave the sum of Three Thousand Dollars ($3,000.00). The remaining portion of my Estate, I leave to my nephew Frederick R. Ahlborn, and my nephew, Morton Raymond and my niece, Hope Raymond, share and share alike. Louie E. Raymond.'

"The other document now in existence reads as follows:

" 'February 3, 1933 Dear Grace—In December I made out a new will, which is here in my box at home. I have intended making a few minor changes and then having it typed and witnessed, but you know how I procrastinate about everything. I haven't even made out a list of how I want to dispose of my clothing, furniture, jewelry, etc. I'll not bother about that now but trust to your discretion. There are a few things I know Mrs. Mitchell would love to have and Constance would want that Japanese water color and of course Ida *must* have Sally, for I've already given her to her. My business papers will seem in a muddle for anyone else to understand but they are easy for me. A little note book in the top file and one in my desk really correspond and should be of help. I am not very demonstrative but you and the boys and your families have meant oh so much to me since mother

left me alone and I want you to know how I love you all. Being my only sister it is only natural you and Frederick come first in my affections, for we have lived where we could see each other almost daily all these years. Thanks for all the help you and Ben have given me. I'd love to have you live in my house if you care to take that as part of your share of my estate. Yours fondly, Lute. I think you all know I desire to be buried beside Mother in Rosehill.' ''

He then alleges a conspiracy of defendants to defeat "his inheritance created by said document which was subsequently destroyed" about August 10, 1937, and to gain, by their fraud, said estate for themselves; that in furtherance of said conspiracy, defendants prepared a writing, "Exhibit A" dated June 16, 1937, which they placed among decedent's effects to convince the other heirs of decedent that it had been prepared by decedent as evidence of her last wishes, namely, that the residue of her estate should go to defendant Peters and her two brothers in equal shares after leaving generous and specific legacies to defendants Peters and Lillienkamp; that said Peters through defendant Rollinson as her counsel, applied for letters of administration upon said estate, alleging no will; that she was appointed and then agreed to pay said Rollinson $40,000; that because said Gordon and Howard Raymond, brothers of said Peters, believed said exhibit A to be a genuine writing prepared by decedent, they agreed with said Peters in writing (exhibit B) to the distribution of said estate as suggested by said exhibit A; that defendants Peters and Rollinson thereafter procured an order for the payment of the sum of $15,000 to be paid to said Lillienkamp as provided by said exhibit A; that said Peters paid to said Rollinson $27,000 and to said Lillienkamp $3,500; that said Peters was thereafter removed as administratrix by said superior court and was surcharged with an order charging her with the payment of about $36,000; that by reason of said acts of defendants and their failure to reveal the existence of said destroyed document, plaintiff had been deprived of his inheritance and damaged in the sum of $156,666.66.

To the lengthy complaint, demurrers were filed by each of the three defendants upon the following grounds: (I) That the court has no jurisdiction of the subject matter of the action; and (II) that the complaint does not state facts suffi-

cient to constitute a cause of action. The demurrers were severally sustained without leave to amend. Judgments ensued that plaintiff take nothing by his action and each defendant was allowed his costs.

I. We thus have an equitable action filed by one who asserts himself to be a devisee under a will that was never presented for probate. He alleges damages by virtue of his claim that he was named as residuary legatee in a destroyed will. But, pursuant to the Constitution (art. IV, sec. 1), the legislature has codified the laws relating to succession in the Probate Code. By its provisions, lost and destroyed wills are the subject of a "special proceeding"; the court in conducting such "special proceeding" has exclusive jurisdiction of that subject. (Probate Code, secs. 350–352.) The method of establishing such destroyed will is derived from said sections. Unless it be admitted to probate pursuant to those provisions, its contents afford no evidence of inheritance except under extraordinary circumstances, exemplified in certain cases hereinafter mentioned. This exact question has been considered by the Supreme Court which declared "that if a court of chancery cannot entertain direct jurisdiction to establish a will, it can possess no jurisdiction to do so as incident to jurisdiction over other matters. Such a course would lead to grave complications and would destroy the uniformity contemplated in the mode and manner of proof and would be opposed to the system established by the constitution and statutory laws of California". (*McDaniel* v. *Pattison,* 98 Cal. 86, 102 [27 Pac. 651, 32 Pac. 805].) In that case plaintiffs alleged that they were "devisees" of decedent under an unprobated will fraudulently destroyed; "that this action is not brought for the purpose of probating a will by whose provisions plaintiffs were bequeathed two-thirds of decedent's estate; that one heir, a defendant, has fraudulently destroyed the will and fabricated a deed by which it appears that decedent has conveyed to said defendant all of his property; that it is impossible that said destroyed will could ever be proved".

Following a review of the authorities, it was held that "a court of equity will not recognize nor act upon a will of land or personal property until it has been admitted to probate"; that "a court of Chancery has no inherent power either in England or America to establish a lost will". No California case holds adversely to this. It would be contrary to sound

reason and to the genius of our jurisprudence to hold that a Chancellor may establish a will before it is offered for probate or that after one judge of the superior court has declined, while sitting in probate, to allow a ''destroyed'' will, he should be required to open another file and proceed to hear the same evidence for the purpose of validating the same will as he sits ''in equity''. He is clothed with the same power as he considers causes in either equity or in probate but the *law* requires him to hear and determine ''in probate'' the merits of claims relating to lost and destroyed wills (sec. 350, Probate Code), and he may not admit a will nor deny it while he sits in any other character. Any person claiming to be entitled to the distribution of the estate of a decedent ''may file a petition in the pending probate proceeding to have the court ascertain and declare the rights of himself and all others to the estate or any interest therein . . . The policy and intent of our statute very clearly contemplates that property of decedents shall be subjected to the process of administration in the probate court''. (*Trout* v. *Ogilvie*, 41 Cal. App. 167 [182 Pac. 333].) Emphatically the provisions of the Probate Code could not be repealed by the decree of the Chancellor whose authority does not transcend the law, whose servant he is.

In support of his complaint and in order to avoid the holding of the Pattison case, *supra*, plaintiff presents certain decisions of our courts and others from beyond the border. The *Estate of Sloan*, 7 Cal. App. (2d) 319 [46 Pac. (2d) 1007], *Estate of Johnston*, 188 Cal. 336 [206 Pac. 628], and *Estate of Bassett*, 196 Cal. 576 [238 Pac. 666], are cited to show that the effect of the Pattison holding is merely that an unprobated will is inadmissible for any purpose and that such holding has been overruled.

The Estate of Sloan arose upon a petition for the distribution of a testamentary trust estate held by the Security First National Bank of Los Angeles. By the terms of the will, the trustee was to hold the estate in trust until William Sloan, son of the author of the testamentary trust, should reach the age of 30 years, or if he should die under the age of 30 years, the trust estate ''should be distributed by a court of competent jurisdiction to the heirs of the said William as per his last will and testament''. William died before attaining the age of 21 years in the State of Massachusetts. He had made

his last will bequeathing his estate to Eleanor Robinson, his maternal aunt, but the Massachusetts court having denied probate of William's last will because of his minority and the said trustee having applied for an order of distribution of said trust estate pursuant to the terms of said will of the said William, this court held that although the said will was invalid, its provision with reference to the exercise of the power of appointment was provable in this state; that since the word "heirs" designated a class, no member of a class designated by the donor may be entirely excluded by the donee of the power from at least a substantial participation in the trust fund; "that the power created by the donor was mandatory" not precatory, and "ordered that such proceedings only be had in the lower court that, after the determination by it of the names of the persons who are entitled to distribution of the estate as heirs of the donee of the power, an order be entered by which such persons or their respective representatives will share in the assets of said estate in accordance with their respective rights as such heirs".

The facts of that case and its holding clearly distinguish it from that of *McDaniel* v. *Pattison, supra.* In the *Estate of Johnston,* 188 Cal. 336 [206 Pac. 628], the holding was substantially this and no more: that the due execution of a later will, destroyed *animo revocandi* may be proved by one witness in order to give effect to its revoking clause. In the *Estate of Bassett, supra,* it was held that a will containing provisions inconsistent with an earlier will revoked said earlier will so far as the latter is inconsistent with the last will, and where the last will revokes the earlier, proof may be made by one witness for the purpose of working a revocation of the earlier will. The same is substantially held in the *Estate of Thompson,* 185 Cal. 763 [198 Pac. 795].

It is a conspicuous feature of the three California cases cited by counsel that they deal merely with procedural matters in probate proceedings. Those authorities do not attempt to establish, nor do they indicate that the probate court can be over-ridden by a chancellor, of coordinate authority, merely because they hold that, in attempting to derive the final intention of a testator from his acts in executing his successive testaments, the courts may establish the last will by the oath of one witness or may cause the distribution of the trust estate by the exercise of a power conferred by a trust indenture

under such circumstances as are disclosed in the *Estate of Sloan, supra.*

As to the decisions coming from the sister states, plaintiff relies upon *Creek* v. *Laski,* 248 Mich. 425 [227 N. W. 817, 65 A. L. R. 1113], and *Dulin* v. *Bailey,* 172 N. C. 608 [90 S. E. 689, L. R. A. 1917B, 556]. These cases would be persuasive only if we had no California authorities upon the subject at hand. Whatever support they might give to plaintiff's pleading is of no value in view of the paramountcy of our own Probate Code and of the reasoning and authority of *McDaniel* v. *Pattison, supra,* which appears to be definitive. Assuming, without conceding, the pertinency of these decisions, authorities from sister states instantly pale in the light of California statutes providing for proceedings with reference to the probate of destroyed wills.

II. No cause of action is stated because (a) there is no provision of the law for a will to be probated by an action in equity as we have demonstrated in division I hereof; (b) there was no will and (c) plaintiff does not present a case contemplated by section 320 of the Probate Code.

(b) The two documents quoted in the complaint do not fulfil the requirements of a holographic will defined by the Probate Code as "one that is entirely written, dated and signed by the hand of the testator himself. . . . No address, date or other matter written, printed or stamped upon the document which is not incorporated in the provisions which are in the handwriting of the decedent shall be considered as any part of the will." (Prob. Code, sec. 53.) If a date printed or stamped upon a purported holographic will invalidates it, then surely a date written upon a letter found with a purported will is without efficacy to establish the will which has no date unless the will itself be specifically incorporated. The letter written by decedent dated February 3, 1933, and which is claimed by the plaintiff to give validity to the purported will, sets forth that *she made out a new will in December; that she intended making a few minor changes and having it typed and witnessed.* This language discloses the intention of the decedent to make a witnessed will provided for by section 50 of the Probate Code, which requires declaration and subscription of the testator in the presence of two witnesses. Of course, the first quoted document might have been a will had it been dated by the writer. But the

letter bears the only date while it contains none of the essentials of a holographic will except that it was entirely written by the hand of decedent. It evinces no indication of the intention of the deceased that it should constitute her last will. Such intention is indispensable to the validity of a holographic will. (*Estate of Miller*, 128 Cal. App. 176 [17 Pac. (2d) 181].) On the contrary, it shows that some other paper yet to be completed would constitute her will. ▆ In order for a document, which is incorporated by reference in an ordinary letter, to gain the status and force of a will, such instrument must be in existence at the time of the writing of such letter. (*Estate of Miller, supra*.) The will referred to in the letter has never been written and, besides, the undated document was not incorporated into the letter. It follows that there is nothing from which we may conclude that said undated document was intended to be her will. A nontestamentary document cannot incorporate an incomplete writing containing only some of the essentials of a holographic will in such a way as to give the adopted paper testamentary completeness. (*Estate of Miller, supra; Estate of Dexter,* 179 Cal. 247 [176 Pac. 168].)

In the *Estate of Dexter, supra,* cited by plaintiff, the intention of the testator was the only question for determination. On May 8th she wrote a memorandum giving some advice, yet there was nothing therein contained calculated to cast doubt upon her testamentary intention as expressed in her will which was written as an addendum to said memorandum, and fully dated May 9, 1904, written and signed with her own hand. Her will was complete in its contents which was in substance as follows: "My estate to be distributed among my nieces and nephews. You act as my executor." There was nothing in said memorandum contrary to the sentiments expressed in her will and it was not necessary to the perfection of the will.

In the *Estate of Miller, supra,* the decedent left a complete holographic will. Folded within it was an undated document written in its entirety by the decedent. The trial court concluded as a matter of law that the two papers taken together constituted her last will. There was nothing contained in the inner document contrary to her dated will. The court justifiably held that the inner document constituted a part of the will because the language contained therein is practically

a repetition of that contained within the dated document. Both writings indicated the intention of the decedent that they should take effect after his death.

 (c) Conceding for the argument that the writings constitute a will, there are no facts alleged that would make either defendant liable under section 320 of the Probate Code which provides as follows: "The custodian of a will within thirty days after being informed that the maker thereof is dead must deliver the same to the clerk of the Superior Court having jurisdiction of the estate or to the executor named therein. Failure to do so makes such person responsible for all damages sustained by any one injured thereby." There is no provision in the section that would apply to the facts of the instant case. Two elements are indispensable to the maintenance of an action for damages against such custodian, namely: (1) The possession of a will by a custodian resulting from its having been confided to the care of such custodian by the author thereof; and (2) failure to present the same to the proper official within thirty days after the decease. Neither is alleged. On the contrary, it is alleged that after the death of decedent, defendants found two documents which, plaintiff alleges, constitute decedent's will. This did not make them custodians. If one is competent to make a will, he may select his own custodian and cause the will to remain in such custody until called for or until the testator's decease. (*Mastick* v. *Superior Court of San Francisco,* 94 Cal. 347 [29 Pac. 869].) In that case, it was held that a custodian can only be taken to mean a person chosen in advance and entrusted with the custody of the will.

In support of his contention that defendants are liable under said section 320, plaintiff cites the case of *Synder* v. *Security First Nat. Bank,* 31 Cal. App. (2d) 660 [88 Pac. (2d) 760]. But that decision demonstrates the codified principle that one who is entrusted by the testator with the custody of a will is liable for damages resulting from his failure to keep and report the will. Decedent had departed life in February, 1930. For some time prior thereto, the defendant was the custodian of the decedent's will dated August, 1919, making the decedent's daughter the sole beneficiary. After said decease, on February 13, 1930, administration of the estate was opened in the State of Montana and the administrator appointed by the Montana court made demand upon

the defendant March 20, 1930, for all documents and papers of the deceased in the possession of defendant. Defendant delivered numerous papers and bonds but no will. It retained possession of his said last will until April, 1936, when the administrator had already depleted the estate in its attempt to satisfy the claims of numerous legatees under a prior will executed in 1917. Those facts present an ideal case for the application of the penalties of said section 320 to a careless custodian.

The judgments are affirmed.

Wood, J., and McComb, J., concurred.