[Civ. No. 1159.  First Appellate District.—February 11, 1913.]

In the Matter of the Estate of J. A. ANTHONY, Deceased. GEORGE SPEED, Respondent, v. BARBARA RETZBACH, Appellant.

HOLOGRAPHIC WILL—DATE—OMISSION OF MONTH.—The omission of the month in the date of an holographic will is fatal to the validity of the instrument.

ID.—TWO LETTERS AS CONSTITUTING WILL—DATES.—Two 'letters cannot be taken together as constituting a holographic will, where the first one, though testamentary in character, is not dated, while the second one, though dated, is not testamentary in character and does not so refer to the first as to incorporate it.

ID.—INCORPORATION OF INSTRUMENT IN WILL BY REFERENCE.—A paper not testamentary in character may be construed with one having that character, when the latter, by proper reference to the former, incorporates it within itself. But before an instrument may be incorporated in another by reference, the reference must be certain, clear, and unambiguous.

ID.—CONSTRUCTION OF WILL—RULE IN FAVOR OF TESTACY.—The rule that favors testacy as against intestacy operates only where the ex-

istence of the testamentary intent is ascertained and the subject matter of the doubt is one of construction. Where there is a doubt as to the existence of the *animus testandi*, the rule is not applicable.

APPEAL from an order of the Superior Court of Alameda County admitting a will to probate. N. D. Arnot, Judge presiding.

The facts are stated in the opinion of the court.

I. F. Chapman, and Goodfellow, Eells & Orrick, for Appellant.

John W. Gwilt, for Respondent.

MURPHEY, J., *pro tem*:—This is an appeal from an order of the superior court of the county of Alameda, admitting to probate as the last will and testament of deceased two letters written entirely in the handwriting of the deceased a short period of time before his death and addressed to the respondent and another friend Lavin. These letters are quite long, and contain a large amount of immaterial matter relative to the writer's dissatisfaction with social, religious, and industrial conditions generally, and informing his friends that he has concluded to end it all in death, which he states to them will have resulted before the letters reach them.

These letters, insofar as they relate to anything material to this discussion, are as follows:

"SAN FRANCISCO,          27, 1911.

"To GEORGE SPEED.

"Dear Comrad:—I have made up my mind that there is one slave too many in this world and that I am that one. Accordingly when you read these lines I shall be dead . . . I send my last greetings to those nearest to me by the ties of blood. I love them now as I have always. I am leaving some little property behind. . . . Enough said. There remains then the I. W. W., and it is my last will and desire that my little real holdings be sold as speedily as may be and the money sent to general headquarters, No. 518 Cambridge Building, Chicago, Illinois, to be used for the purpose of organization and propaganda. I do not specify. They know best. I name the I. W. W. as beneficiaries because I firmly believe in

the coming struggle, etc. . . . It is upon you, my friend, that I impose the duty of attending to this matter. I give you the power of attorney. The necessary papers you will find at my safe deposit box. . . . My union, Local No. 127, will bury me. All moneys left over from the benefits due me shall remain in the local, to be used as they see fit. You will notify C. D. Lavin, Builders' Trade headquarters, Oakland. . . .

"Farewell, and keep in kindly remembrance your comrade,

"J. A. ANTHONY."

SAN FRANCISCO, June 27, 1911.

"CHARLES D. LAVIN,

"Dear Comrade:—When we parted on Monday you said that you would see me on Thursday. So you will, but you must come to me, to my place, where you will find me dead. . . . For this and other reasons I find my satisfaction in being able to render the I. W. W. a slight service after I am dead. I have given George Speed the power of attorney to sell my property and sent the proceeds to headquarters in Chicago. . . . Local 127 will bury me of course, and I direct that the money left over from the benefits due me shall belong to my local. . . .

"J. A. ANTHONY."

It is not disputed that everything contained in these two letters is in the handwriting of the deceased; and it may be inferred from the record that the power of attorney mentioned in the letters was received by Speed in the same envelope that conveyed to him the letter. The power of attorney, being designated "Power of Attorney Special," was dated June 26, 1911, and signed by Jacob Anthony (whose identity with the J. A. Anthony who signed the two letters above set out is conceded), and provided that "Said George Speed is hereby authorized as my attorney to sell" certain real estate described in said power and constituting all the real estate owned by the deceased. This power of attorney was not acknowledged, but was signed and sealed in the presence of a notary public.

The first of these letters, the Speed letter, was offered for and admitted to probate on July 29, 1911. The appellant herein immediately filed an application for the revocation of the probate of the letter upon the ground that it was not dated, and therefor could not be admitted as an holographic

will.  Subsequently and before action had been taken on this petition for revocation the respondent herein filed a petition for probate of both letters above set out upon the ground that the two letters constituted the will of the deceased, and that the omission of the date in one was supplied by the date in the other.

The appellant herein filed a contest to the admission to probate of these letters as the will of the deceased; and upon the trial of the issues thus raised the order appealed from herein resulted.

It is practically conceded that the Speed letter is not sufficient as an holographic will, it failing to measure up as such to the statutory requirements (Civ. Code, sec. 1277) as interpreted by the decisions of the court of last resort in this state (*Estate of Martin,* 58 Cal. 531; *Estate of Price,* 14 Cal. App. 462, [112 Pac. 482]), the essential requirement that in the dating the "year, the month and the day" must be given not being fulfilled.

We now come to the Lavin letter, held by the trial court to have incorporated the Speed letter by reference in such a way as to constitute the two letters the will of the deceased.

The first question suggested is as to whether the Lavin letter in itself is testamentary in character, and whether it discloses on its face any intimation or intention on the part of the deceased to constitute it his last will; and finally, if it can be said to possess either of these characteristics to a satisfactory or convincing extent, then is there such a reference in the Lavin letter to the Speed letter as would incorporate the latter into the former within the meaning and intent of the law applicable to such a contingency?

In order to effectuate these two letters as a testamentary disposition of property the latter must have testamentary character.  In *In re Noyes' Estate,* 40 Mont. 231, [106 Pac. 355], the supreme court of Montana says: "A paper not of a testamentary character is to be construed with one having that character whenever the latter has by proper reference to the former incorporated it within itself, thus giving it also a testamentary character."

The rule of law that favors testacy as against intestacy only operates where the existence of the testamentary intent is ascertained and the subject matter of the doubt is one of

construction. Where there is a doubt as to the existence of the *animus testandi* the rule in favor of testacy is not applicable. In the *Estate of Meade,* 118 Cal. 428, [62 Am. St. Rep. 244, 50 Pac. 541], the supreme court says: "The intention of the deceased that the paper should stand for a last will and testament must be plainly apparent. The heirs at law are not to be disinherited unless such intention be clearly manifested."

"Effect must be given to the intention of the testator if that can be discovered and is consistent with the rules of law; but the intention must be expressed with legal certainty; otherwise the title of the heirs at law must prevail."(*Sutherland* v. *Snydor,* 84 Va. 880, [6 S. E. 480].)

Carrying this idea a little further we find this language in the case of *McBride* v. *McBride,* 26 Gratt. (Va.) 476: "It must satisfactorily appear that he intended the very paper to be his will. Unless it so appear the paper must be rejected."

In *In re Richardson,* 94 Cal. 63, [15 L. R. A. 635, 29 Pac. 484], the supreme court says: "It is not for courts to declare that to be a testamentary disposition of his estate where it does not clearly appear that such was the intention of the individual executing it."

With these principles of law in mind can it be said that the deceased, at the time of writing the Lavin letter entertained the slightest suggestion that he was writing a will? The very idea, as it appears to us, is inconsistent with anything contained in the letter, and certainly inconsistent with the previous conduct and acts of the deceased as well as inconsistent with the theory of respondent. The letter upon its face appears to be a narration to his friend of things accomplished through the instrumentality of his friend Speed and by means of the power of attorney executed to him. The only language hinting at testamentary disposition is in the direction that the money left over from the benefits due shall belong to his local. This was a repetition of the thought expressed in the Speed letter, and at most was confirmatory of the intention there indicated. There can be no doubt but that the atmosphere created by these letters and the power of attorney to Speed indicates an intention on the part of the decedent to dispose of his property. This intention is not,

however, made manifest by the Lavin letter. On the contrary that letter assumes the effectuation of his purposes through the instrumentality of the power of attorney and directions given to Speed. No person we apprehend would have been more surprised than the deceased had the suggestion been made to him that he was at the time of writing the Lavin letter making his will.

It is true that the means he adopted for disposing of his property were ineffectual and abortive; but this is no justification for a court to substitute a method of its own to give life and force to what it may determine to be the general intent of the party. To incorporate into a paper an intent entirely foreign to anything suggested by the circumstances surrounding its making and not manifested by anything appearing upon its face, and inconsistent with the previous conduct and expressions of the author, would be to make the court and not the deceased the testator.

Assuming the Lavin letter to have testamentary character (and we are entirely satisfied that it has not), we are next met with the proposition that there is nothing upon the face of the letter that indicates an intention or design to incorporate in it the Speed letter. The conclusion of the trial court in that respect is purely speculative and, as we see it, in the nature of a fiat-determination. There is no evidence in the record supporting this theory; and the circumstances indicate that in referring to the "power of attorney" given to Speed the deceased meant just what he said.

In the power of attorney he gives Speed, as he supposes, power to "sell" his real estate. In the letter to Speed he informs him that it is his "will and desire" that his real holdings "be sold," and in the letter to Lavin he says that he has given "Speed the power of attorney to sell." These constitute clear evidence and expression of his belief that the power of attorney is a sufficient method to effectuate his purposes, and there is no doubt but that when he wrote to Lavin such was his understanding.

The law requires that before an instrument may be incorporated in another by reference the reference must be clear, certain, and unambiguous. In *Estate of Young*, 123 Cal. 337, [55 Pac. 1011], the supreme court says: "An existing writing may by reference be incorporated into and made a

part of a will; but before such an extrinsic document may be so incorporated the description of it in the will itself must be so clear, explicit and unambiguous as to leave its identity free from doubt.''

Again in *In re Shillaber*, 74 Cal. 144, [5 Am. St. Rep. 433, 15 Pac. 453], the court says: ''All the authorities to which our attention has been called agree that any paper may be referred to and made part of the will. . . . If the will be duly executed and attested the paper referred to, whether attested or not, will become a part of the will if it be already in existence and is clearly described and identified.''

Authorities to this effect might be multiplied almost without limit. (See *Tuttle* v. *Berryman*, 94 Ky. 553, [23 S. W. 345] ; *Brown* v. *Clark*, 77 N. Y. 369; *Dyer* v. *Erving*, 2 Dem. (N. Y.) 160.)

*Allen* v. *Maddock*, 11 Moore P. C. C. 427, 6 Week. Rep. 825, [14 Eng. Reprint, 757], is the leading English authority on the subject of what will serve to incorporate an unattested paper in an attested will. From these authorities it must be apparent that the purported reference in the Lavin letter to the Speed letter wholly fails to measure up to the requirements of the law.

The order appealed from is reversed and the trial court directed to deny the petition.

Lennon P. J., and Hall, J., concurred.