[S. F. No. 12279. In Bank.—September 13, 1927.]

In the Matter of the Estate of MATHEW KELLEHER, Deceased. HELEN H. WALSH, Appellant, v. RICHARD T. POMEROY et al., Respondents.

[1] ESTATES OF DECEASED PERSONS—DEATH OF DEVISEE OR LEGATEE—SUBSTITUTION—SECTION 1343, CIVIL CODE.—Under section 1343 of the Civil Code providing that if a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute some other in his place, such a substitution could be accomplished by a holographic instrument, testamentary in character.

[2] ID.—CONSTRUCTION OF WRITING—INTENT.—In this proceeding for admission to probate of an alleged codicil to the will of a deceased person, it is held that, even if it be assumed that the writing in question is testamentary in character, it is not possible to ascertain from it the intention of the testator in view of the patent uncertainty of the language, but it is further held that the writing does not declare a testamentary disposition of decedent's property.

(1) 40 Cyc., p. 1132, n. 42. (2) 40 Cyc., p. 1179, n. 93, p. 1431, n. 17.

APPEAL from an order of the Superior Court of the City and County of San Francisco granting a nonsuit and denying a petition for admission to probate of an alleged codicil to a will. Frank H. Dunne, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ford, Johnson & Bourquin for Appellant.

George E. Stoker, McNair & Stoker, Livingston & Livingston and John C. Quinlan for Respondents.

PRESTON, J.—This is an appeal from an order granting motion of respondents for nonsuit and denying the petition of appellant for admission to probate of an alleged codicil to the will of Mathew Kelleher, deceased.

. 1. See 26 Cal. Jur. 954.

Decedent, on February 9, 1914, while visiting in Ireland, made a will in which he named respondent Richard T. Pomeroy as one of the executors and Daniel Kelleher of Boston, his cousin, as one of the legatees. The legacy to Daniel, in the sum of 6,000 pounds sterling, about $30,000, was conditioned upon the legatee surviving the testator. The legatee died March 6, 1921, and the testator June 18, 1921, some three months later. At the time of his death the testator was a resident of the city and county of San Francisco and left an estate therein valued at about $90,000. On September 26, 1921, his will was duly admitted to probate in the superior court for said city and county and said Richard T. Pomeroy was appointed by the court as executor thereof.

On July 2, 1925, almost four years later, appellant Helen H. Walsh, a niece of Daniel's wife, petitioned the court to admit to probate as a holographic codicil to said will, the letter partially quoted below, claiming that by said letter, and especially by the clause in italics, decedent intended to and did substitute her as legatee in place of said Daniel Kelleher:

"2020 Howard St., San Francisco,
"Feb. 5th, 1920.

"Dear Daniel & Helan: . . . Now I thought I would write to you about a remark you made concerning a miseral hand reach I sent you and you in return want to pay me back. No sir if you want any more assistance write to me and don't be bashful because *it had been my intention to give you what I promised when I say you I accept Helan as is your wish she shall have that when I shall straighten out for the long journey and I think the public administrator won't get a cent out of it either.* . . .

"(signed) MATHEW KELLEHER. . . . "

The other portions of the letter, which is lengthy, are devoted entirely to gossip and news of a general character.

Appellant offered in evidence another long letter from Mathew to Daniel, undated, but inclosed in an envelope postmarked December 18, 1919, the relevant part of which is as follows:

"Dear Daniel: . . . Now about your niece will send me her name and if there is any change in conditions let me

know because what I promised the other girl Helan she is going to get. . . . Now I want you to have a Christmas dinner. $100.

"(signed)   MATHEW KELLEHER. . . . "

It is conceded that both letters are wholly written and signed in the handwriting of decedent.

Endeavoring to throw light upon the intent of the decedent and the surrounding circumstances, appellant testified that she was intimately acquainted with Daniel Kelleher during her entire lifetime and kept house for him for the last twenty-eight years of his life; that his wife was her aunt, being her mother's sister, and he was second cousin to her father; that her sister Anna Walsh died December 21, 1918; that Daniel wrote Mathew Kelleher acquainting him that she had passed away; that Mathew and Daniel had corresponded for many years; that in the spring of 1918 Daniel received a letter from Mathew stating that inasmuch as he, Mathew, had named Daniel as a substantial beneficiary of his estate, he thought it would be advisable for Daniel to suggest to him the name of the one nearest and dearest to him, to be his, Daniel's, substitute and to take the place of Daniel as beneficiary, whereupon on March 29, 1918, Daniel replied suggesting appellant's name as his substitute, mentioned that he had already made provision for her sister, Anna Walsh, who was then fatally ill.

Respondents objected to the admission in evidence of the foregoing letters and testimony and moved for a nonsuit on the ground, first, that the bequest was uncertain and the evidence offered did not supply the deficiency and, second, that the letter was not testamentary in character, nor did the evidence offered tend to prove that it was intended as a codicil to defendant's will. These objections were sustained and motion for nonsuit granted. The purpose of this appeal is to determine the correctness of such ruling.

[1] Section 1343 of the Civil Code provides: "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute some other in his place. . . . " Such a substitution could be accomplished by a holographic instrument, testamentary in character, but in the nature of a letter, and its scope and effect would be governed by the

showing as to the testator's intention as ascertained from a consideration of the language of the writing, interpreted in the light of the circumstances which attended its execution. (*Clarke* v. *Ransom*, 50 Cal. 595; *Estate of Spitzer*, 196 Cal. 301 [237 Pac. 739] ; 26 Cal. Jur., sec. 258, pp. 954, 955, sec. 190, p. 873.)

[2] However, in this case, even if we assume that the writing is testamentary in character, is it possible to ascertain from it the intention of the testator in view of the patent uncertainty of the language? We think that it is not. The clause: "No sir if you want any more assistance write to me and don't be bashful because it had been my intention to give you what I promised when I say you I accept Helan as is your wish she shall have that when I shall straighten out . . . " might mean that decedent, upon his death, wished Helen to have the amount which he had bequeathed to Daniel or it might as well mean that he wished her to have some other or different amount or thing which had been suggested to him by Daniel. The other portions of the letter do not assist us in interpreting this language and a consideration of the letter postmarked December 18, 1919, only serves to complicate the situation for it is there said, not that Helen is to get what the decedent promised Daniel, but " . . . what I promised the other girl Helan she is going to get." Even assuming in the light of appellant's testimony that the "other girl" refers to Anna Walsh, her sister, who was fatally ill and for whom Daniel had already made provision, and that decedent had first planned to provide for Anna in place of Daniel and later intended to substitute Helen for Anna, still the writing utterly fails to identify the property promised as the 6,000 pounds sterling bequeathed to Daniel by the will of 1914.

While extrinsic evidence is admissible to explain uncertain or ambiguous terms, yet the court, even if certain that the wish of the testator would have been to adopt its interpretation, is not authorized to create a new and valid will. As said in *Estate of Lynch*, 142 Cal. 373, 376 [75 Pac. 1086, 1088] : "But where . . . the will is absolutely devoid of any general description . . . the court cannot insert words in the will to express that intention and thereby make the will certain. The will must be wholly in writing, and the written words, with the aid of the extrinsic facts to which

they may be held to apply, must be sufficient to identify the property. . . . '' To the same effect, see *Estate of Young*, 123 Cal. 337, 342 [55 Pac. 1011].

Furthermore, under the authorities hereinafter set forth, it is our opinion that the writing in question does not declare a testamentary disposition of property but rather implies that it was the intention of the writer, after further consideration, to make provision in the future for both Daniel and Helen as he had promised. It will be noted that the first sentence of the paragraph refers back to the gift of $100 sent in the previous letter and that the next clause offers future assistance ''because it had been my intention to give you what I promised when I say you I accept Helan as is your wish. . . . ''

In the case of *In re Richardson*, 94 Cal. 63 [15 L. R. A. 635, 29 Pac. 484], a letter from a brother to his sister, containing the following clause, was offered as a will: ''My health is probably ruined, and I want to anticipate possibilities. You and your children get everything.'' The court held that the document was not testamentary in character, saying: ''There is nothing in the circumstances and surroundings of the writer which unmistakably evidence that it was his intention that the letter in question should be a testamentary disposition of his estate to his sister Nina and her children. It may be that he wished to be informed of some fact or facts before he made a will; for in this letter he shows a desire to hear from his sister at once. . . . He was not *in extremis*, nor is there anything to show that he contemplated immediate or very proximate dissolution, which might necessitate a final disposition of his estate. . . . It is not for courts to declare that to be a testamentary disposition of his estate when it does not clearly appear that such was the intention of the individual executing it.'' The above language is directly applicable to the facts of the instant case. *Estate of Spitzer, supra,* cited by appellant, is not in point, as there the testator was *in extremis* and the letter addressed to his brother, a lawyer, indicated plainly his desire to make testamentary disposition of the property listed therein.

In *Estate of Branick*, 172 Cal. 482 [157 Pac. 238], the alleged will consisted of a letter, one of a series of about thirty written by decedent to his brother, which closed with

the following expression: "of course these both propertys goes to you and Charley if I should pass in before yous do only I wish Mary would be taken care of. . . . " Two months afterward decedent undertook to make a holographic will but it was invalid. In affirming the order refusing to admit said letter to probate, the court said: "It is quite clear that the testator understood the nature and requirements of a will. It was a fair inference from all the evidence that he fully understood the character of the document that he should execute as a will. The letter in question as a whole does not disclose any purpose or intent to dispose of his estate. The remarks claimed to be testamentary were apparently casual statements intended as information merely. Under the decisions in *Estate of Richardson,* 94 Cal. 63 [15 L. R. A. 635, 29 Pac. 484], and *Estate of Meade,* 118 Cal. 428 [62 Am. St. Rep. 244, 50 Pac. 541], we think he had no testamentary intent in writing this letter to his brother." Likewise decedent in the instant case was thoroughly familiar with the formalties of a will.

See, also, *Estate of Anthony,* 21 Cal. App. 157 [131 Pac. 96], where, citing with approval *In re Richardson, supra,* it is said: "The rule of law that favors testacy as against intestacy only operates where the existence of the testamentary intent is ascertained and the subject matter of the doubt is one of construction. Where there is a doubt as to the existence of the *animus testandi* the rule in favor of testacy is not applicable. (Citing *Estate of Meade,* 118 Cal. 428 [62 Am. St. Rep. 244, 50 Pac. 541].) . . . Carrying this idea a little further we find this language in the case of *McBride* v. *McBride,* 26 Gratt. (67 Va.) 476: 'It must satisfactorily appear that he intended the very paper to be his will. Unless it so appear the paper must be rejected.' . . . With these principles of law in mind can it be said that the deceased, at the time of writing the Lavin letter entertained the slightest suggestion that he was writing a will? The very idea, as it appears to us, is inconsistent with anything contained in the letter, and certainly inconsistent with the previous conduct and acts of the deceased. . . . "

Judgment affirmed.

Langdon, J., Richards, J., Seawell, J., Curtis, J., Waste, C. J., and Shenk, J., concurred.