[Civ. No. 18153. Second Dist., Div. Two. Feb. 19, 1951.]

Estate of JOHN H. FRITZ, Deceased. CATHERINE FRITZ, Appellant, v. EDWARD J. KILFOY et al., Respondents.

Louis J. Euler, Geo. W. Rochester and Frank P. Doherty for Appellant.

Freston & Files, J. R. Files and Sydney Wetzler for Respondents.

MOORE, P. J.—The court having determined by its finding that a dated letter written by the hand of decedent was not intended to be integrated with a holographic will that lacks a complete date, the question presented for decision is whether such finding may be annulled despite the fact that it is supported by substantial evidence.

John H. Fritz deceased October 1, 1949, leaving an estate and two writings, namely, (1) a holographic instrument, herein referred to as "the will," dated December, 1946, naming Catherine Fritz as executrix of his estate, several specific bequests to designated persons, and "out of remainder of my estate one-third to Catherine Fritz, my niece"; (2) a letter to Catherine dated "12-24-1947" as follows: "I suggest or recommend to you to keep the following securities or stock for your share of my estate as they have always paid good returns. Always salable. Swift & Company stock, Bank of America stock, Standard Oil of California, Pullman Company stock. Don't get married to good for nothing fellow that will spend all your money. You will get along on what I leave you if you are careful and hope our good God and his blessed mother will always take care of you. You have been good and kind to me. Save your money and don't be foolish. Everybody loves you as long you can contribute to them, but no one wants you when you have nothing. I have always given good advice and try and to make your will and leave for charity or education for the poor unfortunates."

October 4, 1949, Catherine filed her petition to probate the will. Twenty days thereafter she filed her second petition for probate of the will and the letter as one integrated holographic will. Upon a trial of the issues raised by the opposition to the

probate, Dr. Edward J. Kilfoy, a nephew of decedent, the court below made findings and decision in substance as follows: The document bearing the incomplete date "December 1946" is entirely written and signed in the handwriting of decedent who was at the time competent and acting freely and voluntarily, was in good health and had a sound and disposing mind. The "letter to Cathrin" dated "12-24-1947" is entirely written, signed and dated in the handwriting of decedent who was at the time competent and acting freely and voluntarily and was in good health and of sound and disposing mind. It is not true that the "letter to Cathrin" is testamentary in character or that decedent intended that the document dated "December 1946" and the "letter to Cathrin" should be integrated or incorporated by reference as his last will and testament. (Other findings are not pertinent to the issue on this appeal.)

### The Findings Are Justified

When two or more inferences can reasonably be drawn from established facts the reviewing court may not substitute its deductions for those drawn by the trial court. (*Crawford v. Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) Such rule is not relaxed in contests involving the validity of a will, but the weight of the evidence and the credibility of the witnesses are for the jury and the trial court. Any substantial evidence will support the finding in a probate proceeding. (*Estate of Downey*, 51 Cal.App.2d 275, 285 [124 P.2d 637].) Whether two writings by a testator were, or were intended by him, to be integrated in order to effect his testamentary purposes is a question of fact and a finding on such issue, if supported by substantial evidence will not be disturbed on appeal. (See *Estate of Goldsworthy*, 54 Cal. App.2d 666, 670 [129 P.2d 949].)

Dr. Kilfoy was decedent's attending physician at the time of his decease. Promptly following death the doctor visited his uncle's apartment for the purpose of obtaining the addresses of relatives. Catherine who had been housekeeper for decedent led Edward to the closet in which the lists of kin were found in a shirt box. At his request she took the will from the bottom of the box. It was in a used, brown manila envelope, unsealed, postmarked January 26, 1948, in New York. On the back of the envelope were the written words: "This is my last will enclosed Cathrin A Fritz my neice is Executor for my estate without Bond See Louis J. Euler Attorney of Mine after my Death." At the same time Ed-

ward saw the "letter to Cathrin" lying just beneath the will "in this bottom part of a shirt box . . . It lay separately in the bottom part of the box." The letter was not in any way attached to the brown envelope. Also, he saw some money in the same box. The doctor's testimony differs in no substantial respect from that of Catherine except that she testified that the two writings were attached by a "paper clip."

Persuasive of the truth of Dr. Kilfoy's testimony is the fact that in neither petition of Catherine for probate was a "paper clip" mentioned. The letter was in no way described or designated as a dispositive document. Its only superscription was "for Cathrin Fritz." There is no evidence that decedent ever mentioned to Catherine that he had left the two instruments as his will. In fact, the young woman had never seen the letter in decedent's lifetime. She testified that she and Kilfoy discovered it at the same instant they found the will. While she insists that the letter was clipped to the will, her testimony on that point is weakened by the fact of her long delay in filing the letter for probate after she had filed her petition on the will. Even at that later date she did not present the clip or any other corroborative fact to prove that she had found the two writings attached together.

Appellant's only purpose in belatedly offering the letter must have been to give a date to the will. In that respect it failed of its purpose. ■ To be effective as an integral part of a will a separate document must be dispositive and actually attached to the will, or by its contents disclose that it was intended to supplement the will. ■ Neither condition is a feature of the "letter to Cathrin." Not only were they separate at the time of decedent's passing, but there is not a word in the letter indicating that the testator was bequeathing any property to any person, or was nominating a different executor or attempting to modify the will in any respect. Contrary to appellant's assertion, it is not obvious that the testator's "intention runs in a coherent and consistent continuity all through" both instruments. While the will does in fact "give," and "bequeath" to Catherine personal property, "one-third of my total estate net" and the letter recommends to Catherine that she keep certain specified securities the two documents can be integrated with no more propriety than Evangeline and Miles Standish. Notwithstanding their similarities, each is complete as a literary product in itself. Because the will is void for want of a

definite date it cannot be vitalized by a letter penned over a year later merely because that letter discourses in part on Catherine's bequests. ▉ Where there is no extrinsic evidence of the testator's intention to have his will consist of various pages they will not be so regarded by the courts unless the context indicates such a coherency as to constitute one continuous composition. (*Cole* v. *Webb,* 220 Ky. 817 [295 S.W. 1035, 1037]; *Sellards* v. *Kirby,* 82 Kan. 291 [108 P. 73, 136 Am.St.Rep. 105, 20 Ann.Cas. 214, 28 L.R.A.N.S. 270, 279].) Of course, a valid will may be written on several sheets without attaching them so long as their integration is definitely indicated by the thought. But unless the context reasonably shows that they were all written for a single purpose, i. e., to dispose of the author's estate, to name his devisees and to nominate an executor, they must be regarded as distinct instruments.

In *Estate of Sack,* 88 Cal.App.2d 791 [199 P.2d 420], the court was confronted with a similar situation. The will dated June 16, 1931, was a "complete and positive disposition of his entire estate without reservations" and nominated a bank as executor. After that instrument had been filed for probate, the executor filed a letter dated June 25, 1931. It had been found in the safe deposit box with the will but in a separate envelope. It was a letter to his sister, his residuary legatee. "The whole tenor of the letter disclosed an intention to let the will stand as written, the effect of which is a complete devise to Ida without any reservation." The letter was denied probate because it was not dispositive. The rule is that a clear and distinct devise or bequest cannot be affected by any other words not equally clear and distinct. (Prob. Code, § 104; *Estate of Marti,* 132 Cal. 666, 672 [61 P. 964, 64 P. 1071].) In *Estate of Bauer,* 51 Cal.App.2d 636 [124 P.2d 630], this court reversed an order admitting three letters, each of which indicated a testamentary intent but only one was dated May 1, 1940. The other three did not exist at the time the dated letter was written. The latter was sufficient as a holographic will. Nothing in the undated letters indicated a desire that they be construed with the letter of May 1. They were properly denied probate.

In the case at bar the will was complete in all respects save its date. It made a positive disposition of his entire estate. It gave Catherine one third of the residue and bequeathed the remaining two thirds to relatives, priests and institutions. He recommended that she take her share in

stocks. In his letter he did not intimate the slightest change in his will as written but instead gave only suggestions and advice to his niece. As a will or codicil the letter is defective in that it was not written as a testamentary instrument. If he did not intend that it should dispose of his property, it was ineffective for any purpose in transmitting his estate. (*Estate of Major*, 89 Cal.App. 238, 241 [264 P. 542].) By no words at all and by no reasonable construction can it be said that the will was incorporated into the letter.

Was there an integration of the will and the letter? If the letter did not incorporate the will by reference, it cannot be read with the will unless by virtue of the application of the doctrine of integration. The earliest use of the principle without naming it was in *Estate of Skerrett*, 67 Cal. 585 [8 P. 181]. There a deed and a letter with a copy of the deed of the testator were offered in separate proceedings for probate. On appeal it was held that the undated letter indicated a purpose to devise and since the deed alone was not holographic and therefore not a will, for the reasons discussed, the two documents were admitted as a will. In *Estate of Taylor*, 126 Cal. 97 [58 P. 454], the court found that the writing offered as a will consisted of two sheets of paper and that the second was written three months after the first, but that they constituted one continuous instrument, a single document, a valid will. Parol evidence served to establish that the testatrix had written both papers and inclosed them in an envelope replaced in her trunk. In the *Estate of Merryfield*, 167 Cal. 729 [141 P. 259], the doctrine of integration was felicitously applied because each of the three sheets of paper used by the testatrix provided for a disposition of her estate. They had been folded together in proper sequence and placed in a locked drawer by decedent. Each contained only her handwriting. All three were of the same size, the same paper torn from the same pad. On sheet one she gave all her property to her girls. On sheet two she wrote "the boys have got more than the girls and they won't get any more." On sheet three she wrote "this is my will . . . I want my girls . . . to have all my belongings, my house and lot and the things in the house." It was held immaterial that the will was written upon more than one sheet of paper; it was not necessary that they should be mechanically fastened together.

The word "integration" as applied to the principle was first used in *Estate of Wunderle*, 30 Cal.2d 274 [181 P.2d 874].

"In the law of wills, integration, as distinguished from incorporation by reference occurs when there is no reference to a distinctly extraneous document, but it is clear that two or more separate writings are intended by the testator to be his will . . . Thus several writings connected by sequence of thought . . . folded together . . . or physically forming one document . . . have been admitted to probate as constituting an holographic will." (P. 281.) ■ But while two or more separate writings may constitute one will when they bear either mechanical evidences of the testator's intention or internal proof that the author intended both to be one, yet it is an equally well established rule that the absence of a date or of a testamentary intent in one document cannot be supplied by another totally disconnected instrument. (Ibid.) In *Estate of Swendsen,* 43 Cal.App.2d 551, 555 [111 P.2d 408], the holographic will was written on two separate pieces of paper but only one was dated. They were not attached or in any way connected, but witnesses proved the declaration of decedent to have been that the two sheets constituted his last will. ■ However, where two sheets of paper are neither fastened together, nor found in one envelope and their unity is not proved by parol proof, the omission of a complete date from the testamentary instrument will not be supplied by the date in another letter written on the same day but not of testamentary character. (*Estate of Anthony,* 21 Cal.App. 157, 162 [131 P. 96].) ■ In the instant matter no witness testified that decedent declared the two documents to be one will. Therefore, since decedent's letter to Catherine was in no way attached to the will, the coherency of thought of the two instruments is the only theory whereby their unity may be established.

A comparison of the two writings instantly reveals no continuity of the will to the letter. The will is a dispositive document, designates the objects of the testator's bounty, contemplates an approaching dissolution and names an executrix of his will. The letter discloses nothing paramount to his affection for Catherine and his anxiety that she be not imposed upon by an avaricious suitor. It offers to give nothing to anyone. It proposes not the slightest change in the terms of the will. Its prime objective was to express his concern for her welfare and his gratitude for her kindness, to advise her as to her behavior and to commend certain securities. Since it contains no language indicative of a testamentary intent, it cannot be construed as a will. (*Estate*

*of Major,* 89 Cal.App. 238, 242 [264 P. 542].) That he was not ignorant of the phraseology of a will is evidenced by the 1946 document. Then he gave his effort a caption: "Last Will and Testament of John H. Fritz." He enclosed it in an envelope on which he inscribed: "This is my last will." After declaring his competency, he directs that his debts lawfully incurred be paid. In 18 separate paragraphs he bequeaths specific sums to as many legatees, gives Catherine one third of the residue and then appoints her as trustee of specified funds for certain purposes and nominates her as executrix without bond and in the alternative, Louis J. Euler, "as attorney and executor to settle estate." The composition and language of the document reveal such an intimate knowledge of the elements of a will that the trial judge could hardly have avoided finding that in writing the letter he had no thought that thereby he would transfer property or name an executrix. A similar situation was before the courts some 35 years ago. A will with all formalities had been written by the decedent. Nine months later he wrote a letter to his brother in which he discussed his own properties, a possible sale, a purchase, a request for a loan, and incidentally mentioned that if the brother did not make the loan, still the properties would go to him and Charley "if I should pass in before youss do." The court held that it was a fair inference from all the evidence that the testator fully understood the character of the document that he should execute as a will, but that the letter does not disclose any purpose or intent to dispose of his estate. His remarks were casual, not testamentary. (*Estate of Branick,* 172 Cal. 482, 484 [157 P. 238].)

Now, if the letter to Catherine did not incorporate the will by reference, and it did not; if it did not dispose of property (*Estate of Cook,* 173 Cal. 465, 468 [160 P. 553]) or appoint an executor or name a guardian (Page on Wills, Limited Ed., vol. I, p. 103), and it did neither; if it was not intended to be integrated with the will, and we have shown that it could not have been; if it merely expressed desires of the decedent, as it discloses (*Estate of Goldthwaite,* 140 Cal.App. 551 [35 P.2d 1050]), then the trial court properly rejected it as a testamentary instrument.

Appellant has cited numerous authorities (*Estate of Spitzer,* 196 Cal. 301 [237 P. 739]; *Clarke* v. *Ransom,* 50 Cal. 595; *Estate of Johnston,* 64 Cal.App. 197 [221 P. 382]; *Estate of*

*Miller,* 128 Cal.App. 176 [17 P.2d 181]; *Bond* v. *Seawell,* 97 Eng.Reps. ·1092; *Estate of Dexter,* 179 Cal. 247 [176 P. 168]; *In re Hickman,* 101 Cal. 609 [36 P. 118]; *Estate of Tooley,* 170 Cal. 164 [149 P. 574, Ann.Cas. 1917B 516]; *Estate of Wood,* 36 Cal. 75, 80; *Estate of Mitchell,* 160 Cal. 618 [117 P. 774]; *Estate of Hull,* 77 Cal.App. 792 [247 P. 1093], and others) in addition to those discussed herein. In none of them is language to be found that would warrant reversal of a judgment denying probate of a letter based upon findings that it was not intended as a last will and that decedent did not intend it to be integrated with his will, written 12 months previously, where such findings are supported by substantial evidence.

▆ The final argument presented by appellant is that the Supreme Court's early interpretations of section 53 of the Probate Code (*Estate of Martin,* 58 Cal. 530, etc.) are outmoded, "backward," "harsh and uncompromising" and should be brought "abreast with humanitarian progress of modern law." She contends that "December 1946" is such a reasonable compliance with the statute that the intention of the testator is frustrated by a holding that such date invalidates the will. She cites numerous California decisions (*Estate of Chevallier,* 159 Cal. 161 [113 P. 130]; *Estate of Lakemeyer,* 135 Cal. 28 [66 P. 961, 87 Am.St.Rep. 96]; *Estate of Durlewanger,* 41 Cal.App.2d 750, 752 [107 P.2d 477]; *Estate of Wilkinson,* 113 Cal.App. 645 [298 P. 1037]; *Estate of Fay,* 145 Cal. 82 [78 P. 340, 104 Am.St.Rep. 17]; *Estate of Akeley,* 35 Cal.2d 26 [215 P.2d 921]) wherein the rule was interpreted and some cases from other jurisdictions (*Bailey* v. *Teackle,* Wythe (Va.) 173; *In re Hail,* 106 Okla. 124 [235 P. 916]; *Estate of Irvine,* 114 Mont. 577 [139 P.2d 489, 147 A.L.R. 882]) which support her contention. The answer to such arguments is: (1) The statute[1] says it must be entirely dated by the holographic author; (2) the Supreme Court has held for 70 years that compliance with the requirements of this section "is essential to the validity of a document as an holographic will, viz., that it be *entirely* written, dated, and signed by the hand of the testator himself" (*Estate of Thorn,* 183 Cal. 512, 514 [192 P. 19]; *Estate of Billings,* 64 Cal. 427 [1 P. 701]); (3) if the Legislature had been displeased with such interpretation it would have modified the statute; (4) if it is not a rational interpretation the Supreme Court will reverse its former holdings; (5) an excess of virtue in the decision of an outside jurisdiction

does not cause it to prevail over the settled judicial policy of this state; (6) to transmit one's property by will does not arise from a congenital right but is a privilege granted by the state; and in enacting regulatory rules governing the forms of wills as well as the order of succession the Legislature may fix certain arbitrary requirements.

Judgment affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied March 7, 1951, and appellants' petition for a hearing by the Supreme Court was denied April 19, 1951. Carter, J., Traynor, J., and Schauer, J., voted for a hearing.