[Civ. No. 4998. Fourth Dist. Apr. 19, 1956.]

Estate of FRANK BLAIN, Deceased. BETTIE TREASTER, Appellant, v. F. KENNETH HAMLIN, as Guardian, etc., Respondent.

Robert H. Haden and John P. Hyland for Appellant.

Crowe, Mitchell & Hurlbutt for Respondent.

CONLEY, J. pro tem.*—These are appeals from two complementary judgments denying probate to an alleged integral portion of a holographic will and determining that a granddaughter of the decedent, who is his sole surviving heir at law, is entitled to take the whole of his estate, valued at more than $115,000, to the exclusion of the devisees and legatees named in the will.

The decedent, Frank Blain, and his wife Wanda Berta Blain had one child, Carol, who married Otto Lambert; their only child is Sonia Lambert. The Blains had executed a property settlement agreement and an interlocutory decree of divorce had been issued to them about six months before the happening of an airplane accident in which Mrs. Blain and Mr. and Mrs. Lambert were killed. This left Sonia as the only lineal descendant of Frank Blain; the girl went to live in Los Angeles at the home of Mrs. George Wakefield, sister-in-law of Mrs. Lambert, but she occasionally visited with

*Assigned by Chairman of Judicial Council.

her grandfather, Frank Blain; he operated certain of the Tulare properties which her mother, father and grandmother had left her and accounted for the income to Sonia's guardian, F. Kenneth Hamlin; the guardianship estate shortly before Mr. Blain's death was valued in excess of $120,000.

Frank Blain died on February 7, 1953. Prior to the commencement of the proceedings leading to the decrees from which the appeals are taken, his will was admitted to probate. It consisted of seven separate sheets, each of which was wholly in his own handwriting and dated and signed by him; these seven sheets were found in his safe deposit box in the Bank of America at Visalia folded together and enclosed in a sealed envelope which was endorsed in the handwriting of the decedent, "Last Will F.B." Three of these complete pages were dated June 1, 1949, and four of them April 9, 1952; each of six of the seven parts of the will as admitted to probate dealt with a separate devisee or legatee, and the seventh directed the sale of an additional parcel of real property for the payment of inheritance taxes and probate expenses. Sonia Lambert was not mentioned in any of the seven sheets.

If the will as admitted to probate is the complete will of decedent, there can be no question but that Sonia Lambert was a pretermitted heir entitled to the whole estate of her grandfather by virtue of the provisions of section 90 of the Probate Code:

"When a testator omits to provide in his will for any of his children, or for the issue of any deceased child, whether born before or after the making of the will or before or after the death of the testator, and such child or issue are unprovided for by any settlement, and have not had an equal proportion of the testator's property bestowed on them by way of advancement, unless it appears from the will that such omission was intentional, such child or such issue succeeds to the same share in the estate of the testator as if he had died intestate."

Sonia Lambert is not provided for in the will admitted to probate, and in fact is not mentioned in it in any way; there is no proof or even contention that she was previously provided for by the grandfather in any settlement or by way of advancement; there is nothing in any of the seven pages to indicate that the omission of all provision for the grandchild and only heir at law of the testator was intentional.

Pursuant to section 222 of the Probate Code she would have inherited all of the decedent's property if he had died intestate. Therefore, it is clear that if the will as admitted to probate was the entire will of Frank Blain, the court's decree determining heirship is correct, and Sonia Lambert is entitled to inherit all of the real and personal property owned by him.

The entire case thus turns on the question whether the court erred in denying the petition for the probate of the alleged integral portion of the will; this petition was filed by Bettie Treaster, a niece of Frank Blain, and one of the devisees named in the will admitted to probate; the alleged integral portion of the will is admittedly in the handwriting of the decedent and consists of five words, including the signature, as follows: "to Sonia Lambert Frank Blain" written on a small piece of paper which was wrapped around a dinner ring worth $120 and enclosed in a small ring box found in the bank safe deposit box of decedent, which also contained miscellaneous papers of Mr. Blain and the sealed envelope marked "Last Will F.B." in which had been placed the seven sheets of the will as admitted to probate.

This court's inquiry must be: was there substantial evidence to support the trial court's findings that the document in question ". . . was not made or executed in the manner provided by law for the execution of a holographic will," that it ". . . is not testamentary in character, contains no testamentary dispositon, and exhibits no testamentary intent," that it ". . . cannot be related to the last Will and Testament of said deceased, either by sequence of thought, physical proximity, physical attachment, or continuity of purpose" and the judgment that it formed no part of the will of Frank Blain. For in a contested proceeding in probate the limitations imposed upon an appellate court's review of the facts are the same as in any other civil case. As is said in *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689] :

" 'In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary . . . principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any *substantial* evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably

deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' (Italics added.) (*Crawford* v. *Southern Pacific Co.* (1935), 3 Cal.2d 427, 429 [45 P.2d 183].) The rule quoted is as applicable in reviewing the findings of a judge as it is when considering a jury's verdict." (*Estate of Teel,* 25 Cal.2d 520, 526 [154 P.2d 384]; *Estate of Miller,* 16 Cal.App.2d 154, 159 [60 P.2d 498].)

The foregoing rules have been applied to judgments in cases where the conflict in the record was between inferences which the trier of fact might draw (*Estate of Stickney,* 101 Cal.App.2d 572, 576 [225 P.2d 649]; *Estate of Trefren,* 86 Cal.App.2d 139, 142 [194 P.2d 574]; *Estate of Dotta,* 18 Cal. App.2d 763, 765 [64 P.2d 741]; *Estate of Hathaway,* 38 Cal. App.2d 526, 528 [101 P.2d 741]) and in cases specifically involving the question of integration. (*Estate of Fritz,* 102 Cal.App.2d 385, 388 [227 P.2d 539]; *Estate of Goldsworthy,* 54 Cal.App.2d 666, 670 [129 P.2d 949].)

Unless the piece of paper with the five words on it can be integrated with the will as admitted to probate (*Estate of Moody,* 118 Cal.App.2d 300, 306 [257 P.2d 709]; *Estate of Plumel,* 151 Cal. 77 [90 P. 192, 121 Am.St.Rep. 100]) it cannot pretend to any consideration as a holographic will; it is fatally defective in form in that it bears no date; and strict compliance with the requirements of section 53 of the Probate Code as to handwriting, date and signature is absolutely essential. (*Estate of Towle,* 14 Cal.2d 261, 267 [93 P.2d 555, 124 A.L.R. 624]; *Estate of Billings,* 64 Cal. 427 [1 P. 701]; *Estate of Martin,* 58 Cal. 530, 532; *Estate of Thorn,* 183 Cal. 512, 514 [192 P. 19]; *Estate of Vance,* 174 Cal. 122, 123 [162 P. 103, L.R.A. 1917C 479]; *Estate of Carpenter,* 172 Cal. 268, 269 [156 P. 464, L.R.A. 1916E 498]; *Estate of Wunderle,* 30 Cal.2d 274, 280 [181 P.2d 874].) The trial court's finding that it ". . . was not made or executed in the manner provided by law for the execution of a holographic will" is incontestably true, unless there was integration with the seven written pages in the envelope.

Has the trial court substantial support in the record for the finding that this proposed portion of the will "is not testamentary in character, contains no testamentary disposition, and exhibits no testamentary intent?" We think that a fair consideration of the record compels an affirmative answer. The writing itself "to Sonia Lambert Frank Blain" contains

no description or specification of any property (*Estate of Coffin*, 44 Cal.App.2d 178, 182 [112 P.2d 34]). A holographic will must be complete in itself; there is no authority given by the code section or decided cases to incorporate physical objects as part of the dispositive instrument. But even if the trier of fact had taken the unauthorized step of saying that the words referred to the ring, the court had before it evidence that the ring was already the property of Sonia through inheritance from her grandmother, and that Frank Blain was merely holding it for her; with this background of fact, the words "to Sonia Lambert" could be inferred to mean "This is the property of Sonia Lambert, deliver it to her." If, in a document constituting a will, there should appear the statement "To Jane Doe, my diamond ring" the word "to" in its particular context would be dispositive (*Estate of Weber*, 76 Cal.App. 723 [245 P. 776]); but the word "to" is certainly not a term of art applicable only to testamentary disposition. It is a common word used in sundry circumstances. Letters, telegrams, packages are often addressed with the word "to" preceding the name of the addressee, and the inference could be drawn by the trier of fact from the circumstances developed in the record that no disposition by way of will was intended.

It is, of course, elementary that proof of testamentary intent must be made with respect to the very paper proposed before any document may be admitted to probate as a last will and testament. (*Estate of Wunderle, supra,* 30 Cal.2d 274; *Estate of Sargavak,* 35 Cal.2d 93, 95 [216 P.2d 850, 21 A.L.R.2d 307]; *Estate of Kisling,* 68 Cal.App.2d 163, 167 [156 P.2d 57]; *Estate of Button,* 209 Cal. 325, 331 [287 P. 964]; *Estate of Kelleher,* 202 Cal. 124, 129 [259 P. 437, 54 A.L.R. 913]; *Estate of Spencer,* 87 Cal.App.2d 591, 597 [197 P.2d 351]; *Estate of Hathaway, supra,* 38 Cal.App.2d 526, 528; *Estate of Logan,* 29 Cal.App.2d 60 [84 P.2d 245].) And the court's finding that there was no testamentary intent is supported by substantial evidence.

It should be noted in passing that the principle of interpretation that the law favors testacy over intestacy (Prob. Code, § 102; *Estate of Olsen,* 9 Cal.App.2d 374, 379 [50 P.2d 70]; *Estate of Wierzbicky,* 69 Cal.App.2d 690, 692 [159 P.2d 699]) is usually only operative when the existence of testamentary intent has already been ascertained, "and the subject matter of the doubt is one of construction. Where there is a doubt as to the existence of the *animus testandi* the

rule in favor of testacy is not applicable" (*Estate of Anthony*, 21 Cal.App. 157, 160 [131 P. 96].) (See also *Estate of Kelleher*, 202 Cal. 124 [259 P. 437, 54 A.L.R. 913].) ▇ And a rule of construction can never serve to create a will where one does not exist (*Estate of Beldon*, 11 Cal.2d 108 [77 P.2d 1052]).

The testimony of the witness Harriet Young that on one occasion Mr. Blain showed her the ring and said he was going to leave it to his granddaughter and "he was fixing it to take it to the Safe Deposit Box that day" does not, as in the *Estate of Sargavak, supra*, 35 Cal.2d 93, cited by appellant, relate to oral declarations of a testator with relation to an existing written instrument as tending to show the intent with which it was executed, but rather to a mere intention at some time in the future to make a will; in any event, this evidence only furnishes a conflict with other evidence, direct and indirect, which it was the trial court's duty to resolve.

Finally, in our consideration of the findings, we ask: Was the trial court justified under the record in finding that there was no integration of the slip of paper in the ring box with the seven sheets in the envelope, or, using the language of the court, that the slip of paper ". . . cannot be related to the last Will and Testament of said deceased, either by sequence of thought, physical proximity, physical attachment, or continuity of purpose"?

In *Estate of Wunderle, supra*, 30 Cal.2d 274, 281, it is said:

"In the law of wills, integration, as distinguished from incorporation by reference, occurs when there is no reference to a distinctly extraneous document, but it is clear that two or more separate writings are intended by the testator to be his will. (*Estate of Francis*, 191 Cal. 600, 601 [217 P. 746]; *Estate of Clisby*, 145 Cal. 407, 409 [78 P. 964, 104 Am.St.Rep. 58]; *Estate of Taylor*, 126 Cal. 97, 100 [58 P. 454]; *Estate of Bauer*, 51 Cal.App.2d 636, 638 [124 P.2d 630]; *Estate of Swendsen*, 43 Cal.App.2d 551, 555 [111 P.2d 408]; see Atkinson on Wills, §§ 139, 143; 16 Cal.L.Rev. 154, 155.) Thus several writings, connected by sequence of thought (*Estate of Swendsen, supra*; *Estate of Johnston*, 64 Cal.App. 197 [221 P. 382]), folded together (*Estate of Merryfield*, 167 Cal. 729 [141 P. 259]), or physically forming one document (*Estate of Clisby, supra*; see *Estate of Skerrett*, 67 Cal. 585 [8 P. 181]), have been admitted to probate as constituting an holographic will."

■ The seven sheets of paper constituting the will as admitted to probate, each of which was complete in itself as to date, signature and handwriting, were nevertheless properly considered as one will under the very theory of integration which appellant invokes. The seven writings were in close physical proximity, were physically attached by being folded together, and the sequence of thought and continuity of purpose are apparent through the reading of the documents and by the fact that all of these sheets were enclosed by the testator in a sealed envelope bearing the endorsement in his own handwriting "Last Will F.B."

The suggested integration of the slip of paper in the ring box with the admittedly integrated seven sheets in the envelope, has no such evidentiary support. ■ The slip of paper was physically excluded from everything outside of the ring box; even the ring box was not attached physically in any way to the envelope containing the seven sheets. Both closed ring box and sealed envelope were in a bank safe deposit box with numerous other papers, all of which would normally be kept in a bank vault. There is no reference direct or indirect in any of the seven pages in the will envelope to the paper in the ring box, or to the ring, and there is, of course, no reference by any wording on the slip of paper to the will envelope or its contents.

We have been unable to find any case which would authorize an extension of the doctrine of integration to include the slip of paper from the ring box. The three cases principally relied upon by appellant, *Estate of Dumas*, 34 Cal.2d 406 [210 P.2d 697], *Estate of Moody*, 118 Cal.App.2d 300 [257 P.2d 709], and *Estate of Swendsen*, 43 Cal.App.2d 551 [111 P.2d 408], deal with differing factual situations which furnish a basis for the application of the doctrine. In the Dumas case, *supra*, the testatrix declared all three papers to be her will, they were folded in proper and chronological sequence and placed in an envelope; shortly before the death they were at her direction placed together in a sealed envelope; she indicated on the first sheet that the other sheets would carry out her purpose of making a complete testamentary disposition and the "continuity of the context is manifest." In the Moody case, *supra*, the will was on two sheets of paper, and both sides of the first sheet were written on by the testator; it is apparent from their contents that the testator intended all written parts to constitute his will. "Both parts are wholly testamentary in character; they are integrated by their context; they are con-

gruous, continuous, and make a consistent whole; they were obviously written for the single purpose of disposing of the testator's estate.'' In the Swendsen case, *supra,* the testator stated that both pieces of paper on which he had written constituted his will and then affixed his signature to one; he kept the papers together and handed an envelope containing them to his chief beneficiary and executrix. These cases differ factually from the instant case and constitute no authority to warrant a reversal of the judgment.

Entirely outside of the writings themselves, the record shows that Frank Blain did not intend to leave any part of the substantial estate referred to in the will to his granddaughter, for he expressed himself as believing that she already had inherited sufficient property from her father, mother and grandmother; he wished to have his sister, niece, nephews and friends receive the land and personalty specified in the seven pages of his will. But, unfortunately, the testator knew just enough about probate law to think he could safely prepare his own will; by acting for himself he saved an attorney's fee amounting to perhaps ten dollars and caused a loss to his intended devisees and legatees of well over a hundred thousand; ''a little learning is a dangerous thing.''

The orders and judgments appealed from are affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied May 14, 1956, and appellant's petition for a hearing by the Supreme Court was denied June 6, 1956.