Estate of RUTH R. HAZELWOOD, Deceased. JOSEPH JACOBSON, as Executor, etc., Plaintiff and Respondent, v. BALDO M. KRISTOVICH, as Public Administrator, etc., Defendant and Appellant.

Harold W. Kennedy, County Counsel, and William L. Owen, Deputy County Counsel, for Defendant and Appellant.

Orloff & Wilner and Robert D. Wilner for Plaintiff and Respondent.

LILLIE, J.—The public administrator appeals from order admitting a holographic will to probate, appointing Joseph Jacobson executor and issuing to him letters testamentary, and denying the public administrator's petition for letters of administration.

The entire instrument, written by and in the handwriting of the deceased, bears in the top right corner the purported date of its execution, "1965." There appears to be nothing definite about this "date" except the year, the day and month having been omitted. The sole issue is whether the numerals "1965" constitute a date within the meaning or contemplation of section 53, Probate Code. The statute in pertinent part provides: "A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. . . ."

There is no doubt that the document written by Mrs. Hazel-wood was executed with testamentary intent. Thus, the question is whether on its face the instrument shows a substantial compliance with the mandatory requirements of section 53, Probate Code; if it does not, the writing is invalid as a holographic will.

"Last wills and testaments are entirely creatures of the legislature, and, while some of the formalities with which they are required to be executed may appear to be immaterial and unnecessary, yet the right to thus dispose of one's estate being purely statutory, the manner of such disposal as prescribed by the statute must be observed with at least substantial strictness. If, therefore, there be a substantial departure from such formalities in an attempted testamentary disposal of one's property, there is no last will in law, and the decedent's estate must go to the administrator." (*Estate of Price,* 14 Cal.App. 462, 463 [112 P. 482] ; *Estate of Carpenter,* 172 Cal. 268, 269 [156 P. 464, L.R.A. 1916E 498].) Citing *Carpenter,* the court in *Estate of Thorn,* 183 Cal. 512, 514 [192 P. 19], stated: "Of course, the intent of the deceased is obvious. He was endeavoring to make a valid olographic will, and the manner in which he desired his property to go is clearly specified. Nor can there be a suspicion as to the genuineness of the document. But all this is beside the question. We are confronted here with the question whether in this document there has been that substantial compliance with the mandatory requirements of our statutes relative to the execution of wills that is absolutely essential to the existence of a valid will. (See *Estate of Carpenter,* 172 Cal. 268, 269 [156 P. 464, L.R.A. 1916E 498].)" (P. 514.)

As to holographic instruments, "strict compliance with the requirements of section 53 of the Probate Code as to handwriting, date and signature is absolutely essential. [Citations.]" (*Estate of Blain*, 140 Cal.App.2d 917, 921 [295 P.2d 898].) A holographic will "must be entirely written, it must be entirely dated, and it must be entirely signed by" the testator in order to comply with the statute. (*Estate of Billings*, 64 Cal. 427 [1 P. 701].) This language was quoted with approval in *Estate of Thorn*, 183 Cal. 512, 514 [192 P. 19]; *Estate of Vance*, 174 Cal. 122, 123 [162 P. 103, L.R.A. 1917C 479]; and *Estate of Maguire*, 14 Cal.App.2d 388, 389 [58 P.2d 209].

It is well settled that the writing in order to comply with the requirement that it be dated (Prob. Code, § 53), must designate a complete date including the day, month and year; if it does not, the instrument is not a valid holographic will. (*Estate of Billings*, 64 Cal. 427 [1 P. 701] ["April 1st"]; *Estate of Price*, 14 Cal.App. 462, 463-467 [112 P. 482] ["Dated this —— day of ——, 1906"]; *Estate of Anthony*, 21 Cal.App. 157, 158 [131 P. 96] ["27, 1911"]; *Estate of Carpenter*, 172 Cal. 268, 270 [156 P. 464, L.R.A. 1916E 498] ["10 1912"]; *Estate of Vance*, 174 Cal. 122, 123 [162 P. 103, L.R.A. 1917C 479] ["'22nd day of March in the year of our Lord one thousand"]; *Estate of Moody*, 118 Cal.App.2d 300, 305 [257 P.2d 709]; *Estate of Carson*, 174 Cal.App.2d 291 [344 P.2d 612] ["May 1948"]; *Estate of Fritz*, 102 Cal.App.2d 385, 394 [227 P.2d 539] ["December 1946"]; *Estate of Maguire*, 14 Cal.App.2d 388, 389-390 [58 P.2d 209] ["March nineteen hundred and thirty"]; *Estate of Shiffmann*, 16 Cal.App.2d 650, 651 [61 P.2d 331] ["Tues., Aug. 20"].) While abbreviations of words, figures or other conventional signs, if commonly used and generally recognized, are a sufficient mode of dating a document (*Estate of Lakemeyer*, 135 Cal. 28, 29 [66 P. 961, 87 Am.St.Rep. 96]; *Estate of Chevallier*, 159 Cal. 161, 170 [113 P. 130] ["4-14-07"]; *Estate of Olssen*, 42 Cal.App. 656, 658 [184 P. 22] ["4-12-17th"]; *Estate of Moody*, 118 Cal.App.2d 300, 305 [257 P.2d 709] ["11-21-51"]), the deceased here made no effort to use any such abbreviations. The entire "date" appears simply as "1965."

The figures "1965" written in a group obviously were intended by the deceased to represent the year; certainly they reasonably cannot be construed as containing in addition thereto, a day or month, for none was designated. Similarly,

in *Estate of Price*, 14 Cal.App. 462, 463 [112 P. 482], the question was whether the numerals combined together as representing the year "1906" constituted a date within the meaning or contemplation of the section; the court held that it did not. In *Estate of Carpenter*, 172 Cal. 268 [156 P. 464, L.R.A. 1916E 498], the purported date was "10 1912." The court said: "Appellant's first contention is that the figures '10 1912' might be read as meaning 'the 10th month, the 19th day and the year 1912,' thus coming within the ruling in *Estate of Chevallier*, 159 Cal. 170 [*sic*], [113 P. 130], and *Estate of Lakemeyer*, 135 Cal. 28 [66 P. 961, 87 Am.St.Rep. 96]. The doctrine of those cases is merely that well-known abbreviations may be used in compliance with the code provision in reference to holographic wills, as, for example, '4-14-07' meaning 'April 14th, 1907.' But no such abbreviation was attempted in the will here considered. The photographic reproduction of the instrument which accompanies the record shows the figures '10' followed by a space after which the figures '1912' are written in a group obviously intended to represent the year. It is impossible to determine whether the number '10' represented or was intended to represent the month of October or the 10th day of some other month.

" . . . . . . . . . . . . . .

"The alleged date as written by Mr. Carpenter lacked the most essential requisite of a date as defined by our decisions and that is definiteness." (P. 270.) ▆▆ It is apparent from the face of the document written by Mrs. Hazelwood that it has not been executed in substantial compliance with the mandatory requirements of Probate Code, section 53, and that as a holographic will it is invalid.

Respondent has attached to his brief a photo copy of the document. This print shows a dot or period between the figures "1" and "9," to wit, "1.965"; in examining the print one would be led to believe that such a mark had been intentionally placed there by the deceased. Predicated on this representation respondent argues that "the numerals in the instant case '1.965' should be . . . January 9, 1965," in an attempt to come within the ruling in *Estate of Chevallier*, 159 Cal. 161 [113 P. 130]—that abbreviations or figures can be employed designating the day, month and year. We have inspected the *original* document admitted by the trial court to probate and find that the mark or dot claimed by respondent to have been made by the deceased to separate the figures "1" and "9" to designate the month and day, in fact does

not exist. The entire instrument, including "1965," was written by the deceased in purple blue ink; the purported "dot" on the *original* document is nothing more than a small gray imperfection in the paper itself, and hardly visible. While the deceased left a somewhat larger space between the figures "1" and "9" than between the other three figures in "1965," to this we can attach no significance for the body of the document reveals several instances where she left the same space between the first and second figures of a group, i.e., between the figure "4" and the figure "3" in writing "435 N Kilkea." Additionally, respondent on page 4 of his brief represents "1965" as "1.9 65," but even in respondent's photo copy, no additional space appears between the numerals "9" and "65." There is nothing on the face of the document that would lead any reasonable person to the belief that the group of numerals, "1965," appearing on the top right of the original document amounts to anything more than a designation for the year "1965."

Contending in the lower court that "this is 1-9-65 and not 1965," respondent was asked by the trial judge if he had any evidence, whereupon he offered the testimony of Mrs. Jacobson that the testatrix on January 11, 1965, mentioned to her "a couple of times" about a will she had written a day or two before.

The trial judge was limited to making a determination, on the face of the instrument itself, whether a holographic will had been executed in substantial compliance with the mandatory requirements of section 53, Probate Code; if he found that there was no such compliance, he was bound to find the writing invalid as a holographic will. Since it is clear on the face of the document that the same was not dated, the court erred in receiving extrinsic evidence that the deceased in fact executed it on January 9, 1965. It is noteworthy that the testimony had no bearing on any custom of the deceased of using abbreviations or figures in writing numerals to represent the month, day and year. Moreover, the fact that she believed, and expressed the belief to Mrs. Jacobson, that she had executed a valid will on January 9, 1965, does not make it so; for the purpose of determining whether a holographic will had been properly executed, the intention of the deceased in executing it is of no consideration. (*Estate of Manchester,* 174 Cal. 417, 419 [163 P. 358, Ann.Cas. 1918B 227, L.R.A. 1917D 629]; *Estate of McMahon,* 174 Cal. 423, 424 [163 P. 669, L.R.A. 1917D 778].) It must be

established upon the face of the offered instrument that it is a complete document; the statutory formalities cannot be supplied by extrinsic evidence. As said in *Estate of McMahon*, 174 Cal. 423, 424 [163 P. 669, L.R.A. 1917D 778], "to admit parol evidence (aside from the other legal evils which might readily be pointed out) is also to admit that the instrument in an essential element of its validity is equivocal, and therefore is not complete upon its face; and this admission is itself destructive of the instrument as a completed will, since only a will showing upon its face due and complete execution is entitled to probate." It was error to permit the use of extrinsic evidence to create a complete date from the numerals "1965" when the day and month did not in any manner appear on the face of the instrument.

The order is reversed.

Wood, P. J., and Fourt, J., concurred.